[Argued Oct. 19, 1892; decided Oct. 31, 1892; rehearing denied Dec. 6, 1892.]

## LUDWIG S. NICHOLS v. THE S. P. CO.

[S. C. 31 Pac. Rep. 296: 18 L. R. A. 55.]

1. CARRIERS—COUPON TICKETS—CONTINUOUS PASSAGE.—A coupon ticket issued by a railroad company over its own and connecting lines is an entire contract as to each line but severable as between the different lines. When the passenger enters on his journey over any one of the lines he is bound to continue without stop to the end of his ride thereon, he may, however, stop over at the end of each line.

2. COUPON TICKET—TRANSFERABILITY—REDUCED RATE.—The ordinary coupon ticket is transferable even though it may have been sold at a reduced rate, and have been partly used, unless prohibited by some condition on the face thereof.

3. CARRIERS—EJECTION OF PASSENGER.—A coupon ticket over several lines, not limited on its face as to ownership or continuousness of passage, is transferable, and a purchaser from the original buyer is entitled to ride thereon. If he is ejected because he presents a transferred ticket he is entitled to damages.

4. EVIDENCE—DECLARATIONS OF AGENT.—The declaration of a ticket inspector on examining a ticket, that he rejected it on the ground that it was not presented by the original purchaser, are admissible against the company as evidence that, not being objected to otherwise, it was genuine.

Multnomah County: E. D. SHATTUCK, Judge.

Defendant appeals. Affirmed.

*Wm. D. Fenton*, for Appellant.

*Alfred F. Sears, Jr.*, for Respondent.

LORD, C. J.—This was an action to recover damages from the defendant for ejecting the plaintiff from its cars, and judgment was for the plaintiff, from which the defendant has brought this appeal. As appears from the evidence, the ground upon which the defendant ejected plaintiff from its cars was that he was not the original purchaser of the ticket upon which he claimed the right to ride on its cars from Portland to San Francisco. With the exception hereafter noted, the ticket was as follows:—

NOTE.—The assignability of a railroad ticket is the subject of a note to the above case, reviewing the few cases touching that question: 18 L. R. A. 55.—REPORTER.

Opinion of the court—LORD, C. J.

**Stromberg Pat., May 8, 1878, Rand, McNally & Co., Agents.**

| | 99 | 98 |
|---|---|---|
| ISSUED BY<br>**BALTIMORE & OHIO R. R.** | 97 | 96 |
| | · 95 | 94 |
| ONE PASSAGE OF CLASS INDICATED TO POINT ON | 93 | 92 |
| SOUTHERN PACIFIC COMPANY | 91 L | 90 |
| (PACIFIC SYSTEM) | | |
| **BETWEEN PUNCH MARKS.** | 1800 and | |
| WHEN OFFICIALLY DATED, STAMPED AND PRESENTED WITH COUPONS ATTACHED. | | |
| *Subject to the following Contract:* | 30 | 31 |
| **1st.** In selling this Ticket and checking baggage hereon, this Company acts as Agent, and is not responsible beyond its own line. | 28 | 29 |
| **2nd.** It is subject to the STOP-OVER regulations of the lines over which it reads, and may be exchanged by Conductors at any point for tickets or checks conforming to such regulations. | 26 | 27 |
| | 24 | 25 |
| **3rd.** THIS TICKET IS NOT VALID after date indicated by L punch cancellations on margin, and if more than one date is cancelled it shall be void. | 22 | 23 |
| | 20 | 21 |
| **4th.** *If this Contract and its Coupons bear no cancellation or stamp other than the ordinary dating stamp, the holder is entitled to an unlimited first-class passage,* otherwise the *unpunched figure* above or below the word CLASS on this Ticket and its Coupons indicate its class. | 18 | 19 |
| | 16 | 17 |
| | 14 | 15 |
| **5th.** Any alteration whatever of this Ticket renders it void; and if more than one station is designated as the terminal point, it will be honored only to that station indicated by punch marks nearest the starting point of final coupon. | 12 | 13 |
| | 10 | 11 |
| **6th.** BAGGAGE LIABILITY is limited to wearing apparel, not exceeding $100.00 in value. | 8 | 9 L |
| **7th.** None of the lines named in this Ticket will be held liable for damages on account of any statement not in accordance with this Contract made by any employe of said lines. | 6 | 7 |
| | 4 | 5 |
| **8th.** It is especially agreed and understood by the holder that no Agent or employe of any of the lines named in this Ticket has any power to alter, modify or waive in any manner any of the conditions named in this Contract. | 2 | 3 |
| *CHAS. O. SCULLE,* | DAY | 1 |
| *General Passenger Agent.* | DEC. | NOV. |
| In consideration of the reduced rate at which this Ticket was sold, I agree to the above contract. | OCT. | SEP. |
| | AUG. | JUL. |
| *L. S. NICHOLS,* | JUN. | MAY L |
| WITNESS : · *Purchaser.* | | |
| *J. P. BLISS, Agent.* | APR. | MAR. |
| 41      Form X 02599 | FEB. | JAN. |

| ISSUED BY<br>**BALTIMORE & OHIO R. R.**<br>**SOUTHERN PACIFIC CO. (Pac. Sys.)**<br>To points between Punch Marks. | First-class if not punched, otherwise class unpunched. | 1st<br>L<br>2d |
|---|---|---|

| Oregon City.<br>Salem.<br>Albany.<br>Eugene.<br>Oakland. | Roseburg.<br>Ashland.<br>Redding.<br>Marysville.<br>Stockton. | oatoro<br>San Francisco.<br>omaoeo<br>Mojave.<br>Los Angeles. |
|---|---|---|
| 41 | On conditions named in Contract.<br>X 02599   One passage, not good if detached. | If limited punch here. L |
| | Via GN; CP, CPNCo, NP, SPCo. | |

On the back of the ticket had been stamped these words: "Baltimore and Ohio Railroad Company, April 8, 1891, Columbus, Ohio, City Ticket Office." The evidence shows that the plaintiff bought this ticket on the twentieth day of April, 1891, in Seattle, for twelve dollars, and there signed it; that he was not in Columbus, Ohio, on the eighth day of April, 1891, when the ticket purports to have been issued; that the ticket is just as it was when plaintiff bought it, with the exception of his signature and the coupon slip entitling him to ride from Seattle to Portland, which the conductor detached during his passage between these places on the twentieth day of April, 1891; that the plaintiff was aboard of defendant's cars at Portland on the night of the twenty-first of April, 1891, in continuation of his journey to San Francisco, and that soon after the train started, and when only a short distance from Portland, Mr. Blue, the ticket inspector, demanded to see the plaintiff's ticket, which he produced and handed to him, it being the same ticket as the above; that Mr. Blue, after examining it and requiring the plaintiff to write his name on the back of it, informed the plaintiff that he was not the original purchaser of the ticket, and that he must pay his fare or get off the train, and at the same time put the ticket in his pocket and refused to return it to the plaintiff when he subsequently demanded it before leaving the train; that the plaintiff finding when the train reached Oregon City that force would be used to expel him unless he paid his fare, and not having sufficient money for that purpose, got off the train and came back to Portland the next day.

Substantially, upon this state of facts, the trial court charged the jury in effect that "if the plaintiff was in possession of the ticket within the time limited upon its face when it should be used, and went on board of the cars of the defendant and presented this ticket as an evidence of his right to ride, and he was put off the car upon the ground that he was not the original purchaser of the ticket, then the expulsion of the plaintiff from the car

was wrongful, and the plaintiff would have a right to re-
cover"; that "the holder of the ticket was not precluded
from transferring it to another at the end of any particu-
lar section of this journey, which the ticket indicated that
the holder might perform, and that there was no prohi-
bition in law or in fact against the transfer of such a
ticket as this at the end of any particular part of the
journey indicated by the coupons which made up the
ticket originally, and it was no valid objection to this
man's riding upon the train that he was a different person
from the person to whom the ticket was originally
delivered when first purchased"; that "if there had been
a stipulation on the face of this contract that the ticket
was not transferable, the rule would have been different,
that would be a valid and sufficient contract, and the
party taking the ticket would be bound by it, and if not
the original purchaser would have no reason to complain
if put off the train."

While there are some other assignments of error
arising out of exceptions taken to the evidence and to
other instructions of the court, some of which include
the same objection, and to which we shall presently advert,
the main ground of contention is based upon the alleged
error contained in the instructions referred to above.
This contention is, that the ticket or contract is entire
and personal and not assignable.   Upon its face the con-
tract indicates that the ticket was issued by the Baltimore
& Ohio R. R. Co., as principal as to its own lines of
railroad, but as agent as to the lines of other railroads to
be passed over, including the defendant company's road.
The contract was entire as to a passage over the line of
each road, which, when begun, must be completed, but
was severable as between the different roads.   It was a
distinct contract as to each road.   Each company, through
the agent selling the ticket, made a contract for passage
over its road.     Between tickets of this sort, usually
denominated coupon tickets, which entitle the holder not
only to passage over the line of the company issuing

them, but also over connecting lines necessary to reach his destination, and the ordinary ticket which entitles the holder to passage only over the line issuing it, there is usually this distinction, that in the absence of a contract for a continuous passage only, or through transportation, the holder of a coupon ticket is not bound to continue his passage without intermission when once begun, but may stop off at the end of each line for a reasonable time without losing his right to resume it; while the holder of an ordinary ticket cannot temporarily discontinue his passage when once begun without losing his right to resume it, unless otherwise agreed: Hutch. Car. §§ 577, 578. In cases of this last sort, both parties are held to a continuous performance, when the transportation is once begun, until it is completed. As WALKER, J., said: "When the company has entered upon the performance of its contract, the passenger has a right to insist that it shall continue until completed. On the other hand, the right is reciprocal. When the passenger presents his ticket, and the road has entered upon the fulfilment of its contract, it has an equal right to insist that it shall be continuous till completed; that it shall not be required to perform the contract in fragments": *Churchill* v. *C. A. R. R. Co.* 67 Ill. 393.

But in cases of coupon tickets, where the first carrier acts as agent for the succeeding carriers, the contract does not contemplate a continuous passage over connecting lines when once begun, unless such tickets so stipulate on their face, or there are circumstances from which such stipulation will be implied; otherwise the holders of them will be entitled to stop-off privileges at the end of each line represented by such tickets. This goes to show that such contracts or tickets as the above set out, are not entire but several as between the different roads; it is only entire as to a passage over the line of each, which, when begun, must be completed. In *Ry. Co.* v. *Dean*, 43 Ark. 530, it was held that a purchaser of such ticket over several connecting lines of railroads was not

bound to make a continuous trip from the starting point
to the place of destination, but that when he started on
his journey over any of the connecting lines, he was
bound to continue without stop to the point on that line
named in his coupon: See also *Auerbach* v. *R. R. Co.* 89
N. Y. 281; *Brooke* v. *Ry. Co.* 15 Mich. 332. Nor is there any-
thing in *Walker* v. *R. R. Co.* 15 Mo. App. 333, in conflict
with our position. There it was expressly stipulated on
the face of the ticket that it was good only for a contin-
uous passage; and necessarily when the journey was
once begun it required that the passenger should pursue it
continuously or without intermission. Hence the court
held that the holder of such ticket is not, after beginning
the journey, entitled to stop off at an intermediate point
and subsequently resume the journey. In such case the
transit is an entire thing and necessarily not assignable.
As THOMPSON, J., well observed: "If the contract does
not allow the passenger the privilege of stopping off at a
particular place, it is still more difficult to understand
any principle upon which he is entitled to stop off at such
place, and then, instead of resuming the journey himself
on a subsequent train, to introduce some one else in his
stead and compel the carrier to complete the contract
by carrying such other person on a subsequent train."
Hence the court held that a purchaser of a "train check,"
issued to another person upon a limited ticket and ex-
pressed to be good only for a continuous passage, was
not entitled to subsequently pursue the journey begun
by the purchaser.

But it is argued that the ticket in question is not
assignable, for the reason that its terms purport a sale at
a reduced rate. But it is not perceived how that alters
the nature of the obligation. The general rule is, that a
railroad ticket issued without limitations or restrictions
is transferable; that the property in them passes by
delivery, and entitles the holder to ride upon it. Nor is
there anything in the fact that a railroad ticket is issued
and sold at a reduced rate to alter the nature of the obli-

gation so as to affect its assignability, unless it is expressly conditioned that in consideration of such reduced rate it shall not be transferable.   Nor do any of the authorities cited by counsel hold any different view.   In all of them there are words of limitation or restriction upon the tickets which affected their assignability, and made their transfer unauthorized and not binding upon the company.   It will only be necessary to refer to a few of them to illustrate this, and show their inapplicability to the case in hand.   In *Drummond* v. *S. P. R. R. Co.* 23 Pac. Rep. 733, the tickets were sold at Blue Rapids, Kansas, by an agent of the Union Pacific Company, and used to Salt Lake City, and there sold to the ticket-broker, who sold them to the plaintiff and his wife for the remainder of the trip to San Diego, California.   These tickets contained this condition:  "(3)  *  *  *  or if presented by any other person than the original holder, this ticket is void, and the conductor will take it up and collect full fare."   The court says:  "The purchaser, when he bought these tickets, knew that he had no right to ride part way upon them and sell them for the rest of the way;  and the plaintiff knew by the terms of the tickets that he had no right to buy them."   In *Cody* v. *C. P. R. Co.* 4 Saw. 115, the ticket contract was for "one continuous emigrant passage from Omaha to San Francisco," and had among other limitations, that "it was not transferable," and was signed by the purchaser.   Necessarily the court held that the contract was to carry the same person through the entire route, and that the assignee of it could not ride upon it.   In *Granier* v. *L. R. R. Co.* (La.) 8 So. Rep. 614, the following agreement was across the face of the ticket, viz:  "This ticket is good only for persons named hereon, and when presented for or by any other will be taken up and returned to the general ticket office."

These cases have no application to the case at bar. There are no words of limitation or restriction upon the ticket in question; it vested in the purchaser of it the

evidence of his title to a passage over the line of the
company issuing it, and also over the connecting lines
represented by the coupons.   The obligation of such
carriers was only to carry according to its terms.   These
contained no words restricting the transportation to the
original purchaser, nor inhibiting his assignee from rid-
ing upon it.   The ticket had been issued and the con-
sideration received for it, and in such case what principle
is violated in requiring the carriers to perform the obli-
gation to carry, whether the carriage or transportation
be of A or B, when the parties have put no restrictions
upon its transfer.   It is wholly a matter of contract, and
to be determined upon like principles which govern
other contracts.   In *Hoffman* v. *N. P. R. R. Co.* 45 Minn.
53 (47 N. W. Rep. 312) it was held that after an "excur-
sion" railroad ticket had been used by the holder in
going one way over the route, it was valid in the hands
of a purchaser from the original holder for the return
trip, there being no condition in the contract to the con-
trary.   See also *Carsten* v. *N. P. R. R. Co.* 44 Minn. 454
(S. C. 47 N. W. Rep. 49, and 9 L. R. A. 688).   As there
is nothing in the terms of the ticket in question indicat-
ing that it shall not be transferable in consideration of a
reduced rate or other thing, there does not seem to be
any substantial reason why it should not be transferable
and valid in the plaintiff's hands.   As the judgment is
conceded to be reasonable, if the plaintiff was improperly
expelled from the cars, and the object of the appeal is
mainly to secure a decision upon the question of the
entirety and assignability of the contract, it is hardly
deemed necessary by us, nor do counsel urge us, to
consider other assignments of error to any great extent.

The evidence shows that Mr. Blue, the ticket in-
spector, regarded the ticket as genuine and duly issued,
and that the only objection that he made to it, and the
reason that he required the plaintiff to pay his fare or
leave the cars at Oregon City, was because the plaintiff
was not the original purchaser of the ticket.   Both by

exceptions to evidence and instructions, it is claimed to be error to have permitted the declarations of Mr. Blue to be given in evidence as to what he said at the time of the examination of the ticket, tending to show that it was genuine and authorized originally. These declarations referred to his reasons for rejecting the ticket, and were made in the line of his duty. He was charged with the duty and clothed with the authority of passing upon the validity of tickets issued like the one in question. When he demanded the ticket it was for the purpose of inspect-ing it and ascertaining whether the plaintiff had the right to ride upon it. He was required in the discharge of his duties to accept or reject it; and when he assigned as his only reason for rejecting it, and refusing to allow the plaintiff to ride upon it, that he was not the original purchaser, the defendant ought to be bound by that determination, and the implication arising from it, that the ticket was authorized originally and genuine. There was some evidence tending to show that the defendant had recognized the issuance of such tickets as valid, to which exceptions were taken when allowed as evidence, and also to the instructions in respect to it. In view of other facts to which such evidence was allied, we do not think there can be any doubt of its admissibility, or even without them. Upon an examination of the whole case, we think there was no error, and that the judgment must be affirmed.