SPENCER *et al.*, receivers, *v.* LOVEJOY.

<div style="float:right">

|    |     |
|----|-----|
| 96 | 657 |
| 98 | 681 |

</div>

1. Where through coupon passenger tickets of a particular class were issued by a railroad company over its own line and those of other railway companies, including a system of railways in the hands of a receiver which were being operated by him in separate divisions, the fact that with the receiver's knowledge conductors in his employment had been recognizing and honoring as valid the coupons for his lines of this class of tickets, in connection with the fact that a coupon of a particular ticket of this class was accepted for passage over one of these divisions, sufficiently established in behalf of the holder of the same the agency of the initial company for the receiver in issuing that ticket.

2. Where a system of railways, though owned by one company or operated under one management, is divided into separate divisions, a valid ticket having attached to it coupons for each of such divisions (in the absence of any specific contract, or express restriction upon the ticket to the contrary) entitles the person having the right to use the ticket to break his journey and "stop over" at the end of each division, and then resume it again upon the next coupon of the same ticket, provided this is done within the final limit fixed by the ticket. Such is certainly the law as to

coupon tickets over the lines of different companies; and upon reason and principle, it is applicable to tickets having separate coupons for different divisions of the same line.

3. Under the facts of this case, the ticket held by the plaintiff, though not purchased by him originally, was transferable; and he had the right to use it, and was using it lawfully when expelled from the train. The court, therefore, in its rulings at the trial, was right in applying to the case the law as above announced.

4. Rulings of the trial judge upon minor questions not material, one way or the other, to the merits of the case or its result, need not be specifically passed upon by this court.

August 16, 1895.

Action for damages. Before Judge VAN EPPS. City court of Atlanta. September term, 1894.

Lovejoy brought suit against the receivers of the Richmond & Danville Railroad Co., for illegal ejection from a passenger-train which he entered at Atlanta, Ga., to go to Washington, D. C. The ticket which he presented for passage was as follows:

"Issued by Kansas City, Memphis & Birmingham Railroad. Grand Army of the Republic. Excursion Ticket. Good for one first class passage to Washington, D. C., and return. Subject to the following contract: 1st. When officially stamped and presented with coupons attached. 2d. In selling this ticket and checking baggage, this company acts only as agent, and is not responsible beyond its own line. 3d. It is subject to the stop-over regulation of the lines over which it reads. 4th. It is good for going passage up to Birmingham, Ala., one (1) day in addition to date of sale as stamped on back hereof, and beyond within full final limit. 5th. It is good for return passage within limit as punched in margin, after which time it will be void. 6th. Coupons belonging to this ticket will not be received for passage if detached. 7th. Baggage liability is limited to wearing apparel not exceeding $100 in value. 8th. No agent or employee of any of the lines over which this ticket reads has power to modify the contract of this ticket in any particular. 9th. It is void for passage if any alterations or erasures are made hereon, or if more than one date is cancelled in margin. 10th. In consideration of the reduced rate at which this ticket

is sold, I agree to all the above conditions, and that unless they are fully complied with this ticket shall be void, and upon presentation may be taken up and full fare collected.             J. E. Sockwood,

Gen'l Pass. & Ticket Agent."

Attached thereto were four coupons, the first of which was: "Issued by Kansas City, Memphis & Birmingham R. R.   Kan. City, Memphis & Birmingham R. R.   Birmingham to Memphis.   Stop-overs allowed.   On conditions named in contract.   1st class.   This check not good if detached.   K. C., M. & B.   R. & D."   On the margin: "Washington, D. C., and return."   Each of the other coupons was like the first, except as follows: The second, instead of "Kan. City, Memphis & Birmingham R. R.   Birmingham to Memphis," read, "Richmond & Danville R. R. Co. (Ga. Pac. Div.) Atlanta to Birmingham."   The third, in place of such words, read, "Richmond & Danville Railroad Company.   Washington to Atlanta."   The fourth in such place read, "Richmond & Danville Railroad Co.   Atlanta to Washington"; and from this coupon the words, "Stop-overs allowed," were omitted.   On the back of the ticket and of each coupon appeared the date, Sep. 14th, 1892.   Defendant introduced a sample copy of the ticket as originally sold at Memphis, on which appeared two additional coupons. One of these was like the second above described, except that it read, "Birmingham to Atlanta" instead of "Atlanta to Birmingham," and omitted the words, "Stop-overs allowed."   The other was like the first above described, except that it read, "............ to Birmingham," contained the words, "Good only one day in addition to the date of sale," and omitted the words, "Stop-overs allowed."   On the margin of the main body of these tickets appeared the name of each month in the year 1892, and figures for each day of the month; but there was no date punched, nor other indication of time limit.

It appeared that plaintiff purchased the ticket as first described, from a ticket broker in Atlanta, and took the train of the Richmond & Danville Railroad Co., on September 24, 1892, having had his baggage checked on the ticket. After going several miles, he presented the ticket to the conductor on call for the same; whereupon the conductor rejected it on the ground that it had expired by limit of time, and in default of payment of cash fare, compelled plaintiff to leave the train. The court directed a verdict for the plaintiff, as to the question of liability. The assignments of error are, in brief, as follows:

1. Swanson, the broker who sold the ticket to plaintiff, testified that it came to him on rebate from his office in Memphis. He further testified that he had a number of tickets of the same kind at the same time; that he received those tickets frequently. To this testimony defendants objected because it was irrelevant, hearsay, and *res inter alios acta;* but the same was admitted.

2. Swanson further testified that he sold a number of this particular issue of tickets, and they were all accepted; he never heard of any being rejected but this one. This was admitted over objection that it was immaterial, hearsay and incompetent.

3. Pinkard, ticket broker of Memphis, testified that on September 14, 1892, he purchased Washington and return ticket to Memphis (giving a brief description which would seem to indicate the ticket in question); that it was good one day from date of sale, from Memphis to Birmingham, via K. C., M & B., and from Birmingham to Washington, D. C.; was good within final limit with stop-over privileges, and return within final limit, which was October 10, 1892; and that it was "non-signature." To this testimony defendants objected on the grounds, that the question by which it was elicited

was leading; that it was incompetent; that the ticket itself was the best evidence; and that there was no evidence to show authority from defendants to the K. C., M. & B. to sell the ticket. The court ruled that the testimony would be admitted for the restricted purpose of tracing the ticket back, and identifying it as the one plaintiff bought. The witness further testified that he paid $20 for the ticket to the general agent at Memphis of the K. C., M & B., or his assistant; and on objection the court ruled that the testimony was not pointed to the question of authority, but merely as to the fact how the witness got the ticket. The witness further testified that he purchased nine other similar tickets from the same general agent of the K. C., M. & B., on September 14, 1892, and sold them to Birmingham and Atlanta, with rebate on Birmingham brokers, etc. To this defendants objected on the grounds, that it was immaterial and irrelevant, and that no authority was shown in the K. C., M. & B. road to issue tickets binding defendants. The objection was overruled.

4. The same witness testified that the receivers of the R. & D. R. R. and their conductors and agents honored for passage tickets of the same issue as before specified, sold on account of the G. A. R. at Washington, D. C.; and that "we were honored from Birmingham to Atlanta both." To this defendants objected on the grounds, that it was incompetent, irrelevant and immaterial; and the objection was overruled.

5. Defendants objected to the ticket when offered in evidence, on the grounds, that no authority was shown for the Kansas City, Memphis & Birmingham Railroad Co. to issue it; that there was no evidence that the Richmond & Danville Railroad Co. or its receivers ever issued the ticket or contracted to carry plaintiff; that the ticket was not issued to plaintiff in this case; that it was a special excursion ticket sold for a special occa-

sion at one fare for the round trip; that a stop-over privilege had been claimed and exercised by some person holding the ticket at Atlanta; that it was incompetent to make a special ticket of such kind do duty as a local ticket between the starting point and the ultimate destination; and that the ticket showed on its face that no stop-over privileges existed on the northbound coupons. Defendants also moved for a nonsuit on substantially the same grounds, urging that the purchaser of the ticket was bound to make a continuous passage from Birmingham to Washington, and that the stop-over in Atlanta was a violation of the contract. The objection and motion were overruled.

6. The conductor of defendants testified: "We had special instructions in regard to these tickets, to look out for these tickets; that they thought they were stopping over on them or using them wrongfully." The court ruled out this testimony on plaintiff's objection, holding that no stop-over regulation would be available that was not embraced in the ticket or otherwise brought to the knowledge of the passenger. Defendants contend that, as the ticket was sold subject to the stop-over regulations of the lines over which it read, it was the duty of the passenger to inform himself of such regulations; and that it would be a question for the jury whether such regulations were reasonable.

7. The court refused, on plaintiff's objection, to allow the passenger agent of defendants to testify what sort of ticket the one in question was; and where and between what points stop-overs were allowed, under its terms as understood in railroad affairs and transactions; and why it was that upon the going coupons the words "stop-overs allowed" did not appear, and why they did appear upon the return coupons;—defendants offering such testimony for the purpose of showing a reasonable rule and regulation.

8. The same witness testified that at the time in question, the railroad from Birmingham to Atlanta and north to Washington was under the management of the receivers. The court refused to allow defendants to prove by him that there was but one railroad management from Birmingham to Washington; the purpose of the testimony offered being to show that the contract evidenced by the ticket was entire and indivisible, and that the passenger was bound to accept continuous passage between those points, and had no right by himself or another to compel performance of the contract in detached parts.

9. Defendants presented several requests for instructions to the jury, which the court denied. These were, in brief, that the ticket gave the holder of it a right to continuous passage from Birmingham to Washington, and he could not legally require defendants to perform it in detached parts; that if they had provided reasonable rules as to stop-overs, whereunder no stop-over was allowed between Birmingham and Atlanta or at Atlanta, plaintiff held the ticket subject to such rules and was bound thereby; that the stop-over rule would apply, not merely to points lying between the termini of the separate divisions of the route, but to the terminal points of such divisions; and that the evidence was not sufficient to warrant a finding that the agents of the K. C., M. & B. R. R. Co. had authority to bind defendants by the issuance of the ticket.

10. The numerous assignments of error on the charge of the court (which was practically a direction to find for the plaintiff, leaving to the jury the assessment of damages) are indicated by the foregoing statement of rulings made by the court.

JACKSON & LEFTWICH, for plaintiff in error.
HALL & HAMMOND and L. P. SKEEN, *contra*.

LUMPKIN, Justice.

1. Under the facts recited in the first head-note, and which were duly and legally proved, it is quite certain that the plaintiff made out at least a *prima facie* case establishing the agency of the initial company for the receiver in issuing the ticket upon which the plaintiff was riding when he was expelled from the defendant's train.

2. The authorities settle beyond question, that where a through railroad ticket has attached to it separate and distinct coupons for each of several lines of railway owned by different companies, the person entitled to use the ticket has, in the absence of any specific contract or express restriction to the contrary, the right to break his journey and "stop-over" at the end of each of these lines of railway, and then resume his journey again upon the next coupon of the same ticket, provided this is done within the limit of time during which the ticket is good for transportation. If any doubt upon this question is entertained, it will surely be removed by examining the following text-books and the cases therein cited: Hutch. Car. §578; 4 Lawson's Rights, Rem. & Pr. §1889; Redf. on Car. §444; 2 Wood's Ry. Law, 1398; Wheeler on Car. 147; 25 Am. & Eng. Enc. of Law, 1112. An examination of these authorities will also show that, in principle, they are applicable to coupon tickets over a line of railways owned by the same company, but divided into separate divisions, for each of which there is a coupon upon the ticket. Each coupon, in the absence of a special "stop-over" privilege, requires the traveler to make a continuous journey over the division for which it was issued. It is a sort of separate and independent contract for carriage over that division; but when the end of the division is reached, the passenger may leave the train and resume his journey over the next division upon the coupon issued for it. We

see no reason why a company which chooses to issue separate coupons for different divisions of its own line should not be required to perform its contract of carriage by installments. Indeed, this would seem to be at least one of the purposes of issuing the tickets in this form. At any rate, the law has attached to this class of tickets a peculiar significance, and a railway company issuing them will be presumed to have intended that they should bear the construction which the law places upon them. Certainly a traveler, in the absence of any special understanding or agreement with the carrier, will be protected in attaching to a ticket of this class its ordinary and legal significance.

3. There is nothing in the record even remotely suggesting why the ticket which the plaintiff was using was not transferable, or that, merely because he purchased it from another, he had not a perfect right to use it. In the absence of terms rendering a railroad ticket non-assignable, it passes from hand to hand by delivery. Bish. Non-Contr. Law, §1077.

4. A number of small points were raised at the trial and brought here for review. We shall not undertake to discuss them.     *Judgment affirmed.*