BRIAN, Respondent, *v.* OREGON SHORT LINE RAILROAD
CO., Appellant.

(No. 2,718.)

(Submitted November 26, 1909. Decided December 6, 1909.)

[105 Pac. 489.]

*Railroads—Carrier and Passenger—Special Contracts—Construction—Coupon Tickets—Agency—Estoppel—Time Limit—Burden of Proof—Evidence—Insufficiency—Excessive Damages.*

Railroads—Carrier and Passenger—Coupon Tickets—Acceptance—Signature.
    1.  By accepting a coupon railway ticket, purchased for him and signed by another, plaintiff, in an action to recover damages for being ejected from defendant company's train for the alleged reason that the time limit of the ticket had expired, assented to all the terms and conditions contained in it, as fully as if he had read them and signed the ticket himself; it was, therefore, error to permit him to testify that he had not signed it.

Same—Coupon Tickets—Agency of Issuing Road—Estoppel—Evidence.
    2.  Where defendant railway company had repeatedly accepted coupon tickets, similar to the one held by plaintiff, and the only objection urged by its conductor to the ticket presented by plaintiff having been that its time limit had expired, it was estopped to deny the agency of the company issuing it.

Same—Coupon Tickets—Continuous Passage—Meaning of Condition.
    3.  By agreeing to the provision, contained in a coupon ticket which routed plaintiff over a number of connecting railway lines, "Good for one continuous passage," he consented to the condition that he was not entitled to any stop-over privileges from any one of the lines, but would continue his journey uninterruptedly after beginning it upon any one of the roads.

Same—Coupon Tickets—Nature of Contract—Delays.
    4.  A coupon railway ticket which calls for transportation over a number of connecting lines constitutes a separate and distinct contract between the passenger and each of the different carriers over whose line the coupon furnishes passage; therefore, defendant company, whose line was the last link in the chain of transportation, could not be held responsible for delays occasioned by any other line, which prevented plaintiff from presenting his ticket within the time limited therein.

Same—Coupon Tickets—Time Limit Unreasonable—Burden of Proof.
    5.  Plaintiff, who relied upon a coupon ticket which upon its face had expired when offered for transportation, had the burden of proving that the time limit stated therein was unreasonable and insufficient to enable him to complete his journey.

Same—Coupon Tickets—Time Limit—Construction.
    6.  Under a provision in a coupon railway ticket that it would not be accepted for passage unless used to destination before midnight of a certain day, presentation thereof to the last carrier over whose line it called for transportation, before the hour named, was sufficient, though the journey could not be completed until after that hour.

Same—Coupon Tickets—Time Limit—Delays—Evidence.

    7. Evidence *held* to show that but for certain unexplained delays during plaintiff's journey over a number of connecting railroads, for which defendant company was in nowise responsible, the time limit expressed in a coupon ticket entitling plaintiff to carriage from New York City to Butte was sufficient to enable him to complete his journey.

Same—Ejection from Train—Excessive Damages.

    8. Where the only elements of damage left by the instructions of the court for the jury's consideration, were plaintiff's wounded feelings for being ejected from defendant railway company's train because the time limit stated in his coupon ticket had expired when presented for transportation, and the discomfort suffered from hunger and cold during one night which he was compelled to spend at defendant's depot, a verdict in his favor for $750 was excessive.

Appeal—Assignments of Error—Briefs—Waiver.

    9. Assignments of error which are not argued in appellant's brief will be deemed to have been waived.

*Appeal from District Court, Silver Bow County; Jeremiah J. Lynch, Judge.*

ACTION by Dan Brian, by his guardian *ad litem,* Mike Brian, against the Oregon Short Line Railroad Company. From a judgment for plaintiff and from an order denying a motion for new trial, defendant appeals. Reversed and remanded.

Appellant, through *Mr. J. L. Wines* and *Mr. J. G. Willis,* submitted a brief in support of its contentions; oral argument by *Mr. Wines.*

The evidence wholly fails to show that the Erie Railroad Company, the company selling the ticket, was agent of appellant, nor is there any evidence to show that there was any agency as between appellant and the connecting lines upon which this ticket was used. (*Sencerbox* v. *McGrade,* 6 Minn. 484; *Hatch* v. *Squires,* 11 Mich. 185; *First Unitarian Society of Chicago* v. *Fulkner & Clark,* 91 U. S. 415, 23 L. Ed. 283.) Railroad companies have a right to sell tickets at a reduced rate, or below regular first-class rates, and have a right to require that such tickets shall be used within the time limit shown upon the face of the ticket. (*Elmore* v. *Sands,* 54 N. Y. 512, 13 Am. Rep. 617; *Hill* v. *Syracuse etc. R. R. Co.,* 63 N. Y. 101; *Trezona* v. *C. & W. Ry. Co.,* 107 Iowa, 22, 77 N. W. 486; *Hanlon* v. *Illinois Cent. R. Co.,* 109 Iowa, 136, 80 N. W. 223; *Texas & N.*

O. R. Co. v. *Demilley* (Tex. Civ.), 41 S. W. 147; *Illinois Cent. R. R. Co.* v. *Marlett,* 75 Miss. 956, 23 South. 583.) The purchaser of such a ticket, by accepting it, assents to the terms therein stated although he may not have read or signed it. (*New York etc. Ry. Co.* v. *Bennett,* 50 Fed. 496, 1 C. C. A. 544; *Mosher* v. *St. Louis etc. Ry. Co.,* 127 U. S. 390, 8 Sup. Ct. 1324, 32 L. Ed. 249.)

*Messrs. Breen & Hogevoll* filed a brief in behalf of Respondent; *Mr. S. T. Hogevoll* argued the cause orally.

If the Erie Railway Company was the agent of the Oregon Short Line, then the neglect of the former in transmitting the plaintiff over a line that could reach the Oregon Short Line in time was the fault of the agent of the Oregon Short Line, and therefore, so far as the expiration of the ticket is concerned, the latter road is exactly in the same position as if it had sold this ticket itself in the city of New York. (*Cleveland, C. C. & St. L. Ry.* v. *Kinsley,* 27 Ind. App. 135, 87 Am. St. Rep. 245, 60 N. E. 169; *Lundy* v. *Central Pac. R. R. Co.,* 66 Cal. 191, 56 Am. Rep. 100, 4 Pac. 1193; Thompson on Negligence, secs. 2600, 2605.) In the case of *International & G. N. R. Co.* v. *Ing,* 29 Tex. Civ. App. 398, 68 S. W. 722, it was urged that "the proof shows that he bought the ticket from a third person, and fails to show that such person was an agent of the railroad company," but the court held that the ticket in itself was *prima facie* evidence of a right to transportation.

Plaintiff could not reach the Oregon Short Line in time; therefore, such limit was unreasonable, and is absolutely void and of no effect. (28 Am. & Eng. Ency. of Law, p. 177.) He was without fault and therefore could complete his journey to his destination notwithstanding such limitation. (5 Cyc. 575.)

The verdict was not excessive. (*Grayson* v. *St. Louis Transit Co.,* 100 Mo. App. 60, 71 S. W. 730; *Guthier* v. *Minneapolis etc. R. Co.,* 87 Minn. 355, 91 N. W. 1096; see, also, Thompson on Negligence, pp. 296, 395.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

The plaintiff, a minor, through his guardian *ad litem* brought this action to recover damages, and in his complaint alleges that he on October 5, 1907, having bought a ticket which entitled him to ride on defendant's cars from Salt Lake City to Butte, entered one of the defendant's passenger-cars at Salt Lake City, and defendant then and there agreed to carry him as a passenger to Butte; that he was carried from Salt Lake City to Ogden, but at Ogden the defendant, acting through its agents and servants, by threats and menaces expelled him from its car; that he was among strangers without money, and suffered from cold and hunger, and, in addition thereto, was injured in his feelings, all to his damage in the sum of $2,000. The answer denies generally and specifically every one of the foregoing allegations. The jury returned a verdict in favor of the plaintiff for $750, and from the judgment entered thereon, and from an order denying it a new trial, the defendant appealed.

While there are some contradictions in the evidence, we think these facts appear: On August 12, 1907, Henry Mulholland paid to J. G. Nash, who was city ticket agent for the Great Northern Railway Company at Butte, and apparently a local agent for that steamship company known as the White Star Line, the sum of $76.25 to purchase steamship and rail transportation for the plaintiff from Liverpool to Butte. Later the plaintiff took passage at Liverpool, and on September 28 landed in New York City. On the same day he secured from the Erie road a third-class limited coupon ticket to Butte, which routed him over the Erie road from New York to Chicago over the Chicago, Rock Island & Pacific from Chicago to Denver, over the Colorado Midland from Denver to Grand Junction, over the Rio Grande Western from Grand Junction to Ogden, and over the Oregon Short Line from Ogden to Butte. The ticket contains several stipulations, one for a continuous passage, and another that the ticket would not be accepted for

passage unless used to destination before midnight of October 4, 1907. The plaintiff left New York on September 29, was delayed four hours in Chicago, eighteen hours in Denver, and the train which carried him into Ogden was three hours late. He arrived in Ogden about 6 o'clock on the morning of October 5, and, when he presented himself for passage on the first Oregon Short Line train bound for Butte on the afternoon of that day, he was refused carriage on his ticket because it had expired. The body of the tickets, above the attached coupons, contains the terms and conditions of the contract, and bears a signature purporting to be that of the plaintiff. During the course of his examination plaintiff was asked by his counsel whether he signed the ticket, and, over the objection of defendant, answered that he did not. The ruling was erroneous. It was wholly immaterial whether he signed it or not. The ticket is in form and in fact a special contract for passage. The plaintiff accepted it, acted upon it, and received his transportation to Ogden by virtue of it, and by so doing he assented to all its terms and conditions as fully as if he had read and signed it. (*Hanlon* v. *Illinois Cent. R. Co.,* 109 Iowa, 136, 80 N. W. 223; *Quimby* v. *Boston & M. R. Co.,* 150 Mass. 365, 23 N. E. 205, 5 L. R. A. 846; *Fonseca* v. *Cunard Steamship Co.,* 153 Mass. 553, 25 Am. St. Rep. 660, 27 N. E. 665, 12 L. R. A. 340; 2 Hutchinson on Carriers, sec. 1028, and cases cited.)

In excluding the defendant's offer to prove that the ticket was sold at a reduced price the error committed was harmless in this particular instance, considering the particular character of the ticket involved. The plaintiff was not in a position to demand any kind of ticket he might have desired. He was not purchasing his transportation; on the contrary, it had been purchased for him, and, in the absence of any evidence to the contrary, his acceptance of this ticket was at least *prima facie* evidence that he received precisely the kind and character of ticket for which payment had been made. That a common carrier may issue such a ticket as the one before us is too well settled to be now open to question.

Defendant offered to prove that the Erie agent who supplied plaintiff with this ticket was also the agent of an association known as the Immigrant Clearing-house, and that this defendant company was not one of the associated roads   The offer was refused, and properly so.   If the Erie road was to any extent the agent of the Oregon Short Line in selling this ticket, the offered evidence was clearly immaterial.   This brings us to a consideration of the important questions presented by this appeal.

1. In furnishing this ticket, was the selling company the agent of the Oregon Short Line?   The ticket on its face declares that in selling it the Erie road acted only as agent and would not be responsible beyond its own line.   The evidence shows that similar tickets, issued by the same company, over the same lines—which tickets had not expired—had been accepted by this defendant company.   We are inclined to think that this of itself was sufficient to show the agency.   (*Spencer* v. *Lovejoy,* 96 Ga. 657, 51 Am. St. Rep. 152, 23 S. E. 836.) But, furthermore, when this ticket was examined by the conductor of the defendant company, at Ogden on October 5, his only objection to it was that it had expired.   In *Nichols* v. *Southern Pac. Co.,* 23 Or. 123, 37 Am. St. Rep. 664, 31 Pac. 296, 18 L. R. A. 55, the court said: ''He [the conductor] was charged with the duty and clothed with the authority of passing upon the validity of tickets issued like the one in question. When he demanded the ticket, it was for the purpose of inspecting it, and ascertaining whether the plaintiff had the right to ride upon it.   He was required in the discharge of his duties to accept or reject it; and when he assigned as his only reason for rejecting it, and refusing to allow the plaintiff to ride upon it, that he was not the original purchaser, the defendant ought to be bound by that determination, and the implication arising from it, that the ticket was authorized originally and genuine.''   We agree with this declaration of the Oregon court.   Any other rule would impose upon the traveling public an intolerable burden.   It is a matter of common

knowledge that in this country we do not have a strictly trans-
continental line of railroad operated by one company; and yet
a traveler may procure a ticket in Seattle good for passage to
Portland, Maine.   Necessarily he will have to travel over sev-
eral different lines of road, and it would be impossible, or at
least impracticable, for him to ascertain whether the selling
road was the agent of each of the other roads over which he
would be required to make his journey; and it would be an in-
tolerable imposition upon him to require him, after having paid
for his through passage, to undertake it at the peril of being
refused passage by every road other than the one from which
the ticket was purchased.

2. By agreeing to the provision in the ticket, ''Good for one
continuous passage,'' the plaintiff merely bound himself that
once on any of the lines of road over which he was routed he
would pursue his journey over that road continuously or with-
out interruption.   In other words, he agreed that he was not
entitled to any stop-over privileges from any one of the lines
of road.   (4 Elliott on Railroads, sec. 1596; 2 Hutchinson on
Carriers, sec. 1048.)

The provision in the ticket that it would not be accepted for
passage unless used to destination before midnight of October
4, if construed literally, would require the journey to Butte
to be completed before the hour named; but by its requested in-
struction No. 8 defendant concedes that it was only necessary
for plaintiff to take passage on one of defendant's trains bound
for Butte before midnight of October 4.   Apparently coun-
sel for plaintiff contend that it was only necessary for plaintiff
to commence his journey from New York City before the date
which fixed the limit of the ticket's duration; for in their brief
they say: ''We claim that the ticket was used before midnight
of October 4, 1907.   It was used in the city of New York
when he entered the Erie Railway.   It was used in Denver.
*   *   *   '' But this argument begs the question; for it im-
plies that the contract only requires the ticket to be used be-
fore midnight of October 4, while the contract provides that

it shall be used *to destination* before that hour. The court cannot make for these parties a contract different from the one they themselves executed. The utmost that we can do is to construe the contract as it is written.

The case of *Lundy* v. *Central Pac. R. R. Co.*, 66 Cal. 191, 56 Am. Rep. 100, 4 Pac. 1193, is cited by respondent, and, if the facts in this case were similar to the facts in that one, counsel's contention above would be pertinent here. In the *Lundy Case* the Union Pacific Road issued to the passenger a ticket over its line to Ogden, and over the Central Pacific from Ogden to San Francisco. The ticket contained this provision: "It will not be good for passage after nine (9) days from date of sale." The purchaser of the ticket took passage within the nine days, but did not reach Ogden until after that period of time had elapsed. The opinion of the court is so brief that it is difficult to ascertain the reason for the court's conclusion; but there was evidence showing such a traffic arrangement between the two roads that the court must have held the ticket the joint contract of both roads, otherwise the decision would not have anything to support it. If this was the view of the court, then we readily agree that under the terms of the ticket the purchaser was only required to begin his journey before the ticket expired. The authorities now generally support this holding. In 4 Elliott on Railroads, section 1598, the rule is stated as follows: "When a ticket is required to be used on or before a specified day, it is sufficient if the trip is begun upon the particular line and the ticket presented before midnight of such day, although the journey is not completed upon such line until after that time." That this rule does not apply to a ticket of the character of the one now before us we shall see hereafter.

Counsel for respondent further contend that the evidence shows that the limitation in this ticket was unreasonable, and that it was impossible for plaintiff to reach Ogden before the ticket expired, and they cite 28 American and English Encyclopedia of Law, second edition, 177, as follows: "If the time limit is less than is sufficient to accomplish the trip, it

would, of course, be unreasonable, and therefore of no effect." There cannot be any question of the correctness of this rule; but we are unable to agree with counsel that the facts are as they assume them to be. The evidence shows that this ticket was procured in New York City on September 28, 1907, but it is silent as to the time of the day when plaintiff received it. The plaintiff did not begin his journey until September 29, was delayed four hours in Chicago, and eighteen hours in Denver. He reached Ogden six hours after his ticket expired; so that it is manifest that but for these delays he would have reached defendant's road several hours before the final limit prescribed in his ticket. A sister of plaintiff, who accompanied him on his journey, testified to their stopping in New York, and in answer to the question, "Tell us whether or not you and your brother made any effort to leave earlier than you did?" answered: "Yes; we did." After telling of the time lost at Chicago and Denver, the same witness said: "We couldn't leave because we couldn't get a train." The plaintiff testified to substantially the same thing. Counsel for respondent insist that it thus appears that the delays were not occasioned by the fault of the plaintiff, and then cite 6 Cyc. 575, to the effect: "That if, without fault of the passenger, he is delayed so that he cannot complete his journey within the limitation of the ticket, then he is entitled, notwithstanding such limitation, to continue his journey to his destination." The author cites in support of the text *Watkins* v. *Pennsylvania R. Co.*, 21 D. C. 1; *Gulf C. & S. F. R. R. Co.* v. *Wright*, 2 Tex. Civ. App. 463, 21 S. W. 399; *Texas & Pac. Ry. Co.* v. *Dennis*, 4 Tex. Civ. App. 90, 23 S. W. 400. We do not have access to the first of these cases. The case of *Railroad Co.* v. *Wright* deals with the question of the reasonableness of the time limited in the ticket, and does not support the text at all. In the *Dennis Case* it was held that where a railroad company sells a special excursion ticket to enable a patron to attend a public sale of town lots in a particular city, and limits the time for the return passage to such an extent that the passenger cannot make the trip, at-

tend the sale, and return within the time allowed, he will be permitted to complete his journey over the road selling the ticket even after the time limit has expired. We think this conclusion correct; but it does not touch the proposition of law announced in the text. It is apparent, too, that the statement in the text must have been written with some reservation; for, in apparent explanation of it, it is said in a note accompanying the cases cited: ''If the transportation is under a coupon ticket, each part representing a separate contract with the different connecting lines, delay caused by the default of the carrier on one line will not operate to extend the time limit as to transportation on subsequent lines.'' The doctrine of the text would apply if the contract for carrying the passenger the entire distance was the individual contract of a single carrier, for then, in addition to the terms expressed in the contract, there would be implied (a) that the time allowed was sufficient to make a continuous passage in the ordinary course of travel; and (b) that the passenger would be carried over the entire journey in the ordinary course of travel, and therefore within the time limited, and, if without fault of the passenger he was not transported to his destination within the time allowed, the carrier would not be heard to assert a right arising out of its own failure to carry out the terms of the contract—express or implied. Such a case is presented in *Quimby* v. *Vanderbilt,* 17 N. Y. 306, 72 Am. Dec. 469. Precisely the same result would follow if the contract was the joint obligation of all the companies over whose lines the passenger was routed. (*Lundy* v. *Central Pac. R. R. Co.,* above; 28 Am. & Eng. Ency. of Law, 2d ed., 178.)

The case of *Cleveland, C., C. & St. L. Ry. Co.* v. *Kinsley,* 27 Ind. App. 135, 87 Am. St. Rep. 245, 60 N. E. 169, cited by counsel for respondent, does not go further than to hold that, where the passenger commences his journey before the expiration of his ticket, he is entitled to make a continuous journey to his destination, even though the journey is not completed until after the ticket expires. But this is held in a case where the company selling the ticket operated the entire line of road

over which the passenger traveled, and the decision is in harmony with practically all the authorities, but is not in point here, where the Erie company acted only as agent in selling the ticket beyond its own line, and the passenger was compelled to travel over several distinct and independent lines, for each of which a separate coupon was issued. The plaintiff's contract does not purport to be the joint contract of the several roads over which he traveled—rather the contrary appears— and there was not any evidence offered showing any traffic or working agreement between the several lines from which a joint contract could be inferred. It does not even appear that the defendant company received any portion of the purchase price of the ticket. The only evidence upon the subject is that Nash, from whom the ticket was purchased, sent the purchase money to the agent of the White Star Line at Minneapolis. In the absence of any evidence that this ticket was the entire contract of the road which furnished it, or the joint contract of the several roads, what is to be said of the ticket considered as a whole?

So far as we are able to determine, the authorities are unanimous in holding that the body of the ticket and each coupon constitute a separate and distinct contract between the passenger and the particular line of road over which the coupon furnishes transportation. In other words, under the facts of this particular case as shown by this record, the plaintiff had one contract with the Erie road to carry him from New York to Chicago; a separate contract with the Rock Island to carry him from Chicago to Denver; another separate contract with the Colorado Midland to carry him from Denver to Grand Junction; still another distinct contract with the Rio Grande Western to carry him from Grand Junction to Ogden; and, finally, a separate contract with the Oregon Short Line to carry him from Ogden to Butte. The following are some of the authorities announcing the rule: *Boling* v. *St. Louis & S. F. R. Co.*, 189 Mo. 219, 88 S. W. 35; *Gulf, C. & Santa Fe Ry. Co.* v. *Looney*, 85 Tex. 158, 34 Am. St. Rep. 787, 19 S. W. 1039, 16 L. R. A. 471; *Auerbach* v. *New York C. etc. R. Co.*, 89 N. Y. 281, 42 Am. Rep.

290; *Chicago & A. R. Co.* v. *Mulford,* 162 Ill. 522, 44 N. E. 861, 35 L. R. A. 599; *Young* v. *Pennsylvania R. Co.,* 115 Pa. 112, 7 Atl. 741; *Spencer* v. *Lovejoy,* above; 2 Hutchinson on Carriers, sec. 1049; 4 Elliott on Railroads, sec. 1596. The rule is announced in 6 Cyc. 571. In speaking of a ticket such as the one before us, it is said: "A ticket thus sold is not a through contract, and the right of the purchaser and the responsibility of the different companies are the same as though separate tickets had been purchased by him from each, and each is responsible for injury suffered on its own line, and not otherwise."

*Head* v. *Georgia Pac. Ry. Co.,* 79 Ga. 358, 11 Am. St. Rep. 434, 7 S. E. 217, is sometimes cited as holding a contrary view. As we read the opinion, it does not do so, but does announce a doctrine, with respect to another matter, contrary to the decided weight of authority. Indeed, counsel for respondent do not question the correctness of the rule above. They plead in their complaint a contract with the defendant company, and in their brief cite *Nichols* v. *Southern Pac. Co.,* above, and quote from it the following, said with reference to a coupon ticket like the one before us: "But in cases of coupon tickets, where the first carrier acts as agent for the succeeding carriers, the contract does not contemplate a continuous passage over connecting lines when once begun, unless such tickets so stipulate on their face, or there are circumstances from which such stipulation will be implied; otherwise, the holders of them will be entitled to stop-off privileges at the end of each line represented by such tickets. This goes to show that such contracts or tickets as the above set out are not entire, but several as between the different roads. It is only entire as to a passage over the line of each, which, when begun, must be completed."

If, then, the plaintiff's contract with every road over which he traveled was his separate contract with that road only, it follows as a matter of course that this defendant cannot be held responsible for delays occasioned by any other road or roads This rule is tersely stated in 28 American and English Ency-

clopedia of Law, second edition, 178, as follows: "If the ticket is in coupon form, and expressly provides that the carrier selling it is merely the agent of the connecting roads, and is not responsible beyond its own line, the passenger is not entitled to be carried over the last road after the time has expired, although he is delayed by the fault of one of the other companies," and the authorities generally support the text.

The evidence offered by plaintiff in explanation of his delays at New York City and while en route may tend to exculpate him from any charge of negligence or other fault, but it does not explain the delays after all. It does not explain whether the delay in Chicago was occasioned by the fault of the Erie road in not getting him to Chicago on time, or of the Rock Island road in not leaving on time; and the same thing is true with respect to the delay of eighteen hours in Denver. The difficulty which confronts us is occasioned by the fact that the evidence on this point is so meager that we cannot tell where the blame should be placed; and we cannot assume from the mere fact that plaintiff did not reach Ogden in time that the selling agent in New York placed an unreasonable limit on the ticket in allowing six full days, not counting the day upon which the ticket was issued, for plaintiff to make the journey from New York to Ogden; and, since plaintiff raises the question by relying upon a ticket which on its face had expired when offered for passage, the burden of proof is upon him to show that the limitation is unreasonable, and in this we think he failed. In the absence of such showing, the plaintiff's contract with the Oregon Short Line required him to present his ticket for passage between Ogden and Butte before midnight of October 4, and, failing to do so, he was not entitled to be carried over defendant's road by virtue of that ticket, and defendant's conductor could properly refuse to permit him to board the train at Ogden, or could eject him from the train, if in doing so he used no more force than was necessary to accomplish the purpose.

3. Complaint is made that the verdict for $750 is excessive. The trial court instructed the jury that, if they found for the plaintiff, they should not consider the question of loss of time or the value of the ticket from Ogden to Butte, and further informed the jury that there was not any evidence that plaintiff received any personal or bodily injury. These charges withdrew from the consideration of the jury the principal elements of damages in most cases of this character, and left the jury to assess damages for the plaintiff's wounded feelings and the discomfort which he suffered from hunger and cold, if any appeared, as the proximate consequence of his delay in Ogden. The evidence shows that he was compelled from lack of means to stop at the defendant's depot over night; that he had no means with which to procure food, but that on the day after his arrival he was furnished food by someone who interested himself in plaintiff's behalf. Under the evidence disclosed by this record, we think the plaintiff showed himself entitled to little more than nominal damages. Certainly the amount awarded was altogether out of proportion to the injury, if any, received (*Texas & Pac. Ry. Co.* v. *Dennis,* above) ; but, since there must be another trial of the case, it will not be necessary to consider this question further.

There are other assignments of error; but, since they are not argued in the brief, they will be treated as waived.

We think the evidence is insufficient to sustain the verdict or judgment upon the theory of the case as we have outlined it, which manifestly was not the theory upon which the trial court proceeded.

The judgment and order are reversed, and the cause is remanded for a new trial.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY concurs.

MR. JUSTICE SMITH concurs in the reversal.