ILLINOIS CENTRAL RAILROAD COMPANY *v.* SOLOMON GORTIKOV.

[45 South., 363.]

1. RAILROADS. *Passengers. Tickets. Ejection. Description of purchaser. Punch marks.*

A railroad passenger is not required to verify the punch marks placed on his ticket by the selling agent, and where the ticket described the passenger otherwise accurately, even noting the fact of his having a mustache, a conductor is not authorized to eject him because the selling agent by mistake punched the ticket for a female instead of a male.

2. SAME. *Return limit.*

Where by its terms a railroad ticket is good for a return trip until a given date, its limit is not shortened by punch marks in its margin, placed there mistakenly by the selling agent.

3. SAME. *Ejection. Punitive damages.*

The original purchaser of a return railroad ticket, if ejected by the conductor because the selling agent had erroneously punched his ticket for a female instead of a male, can recover both actual and punitive damages where the conductor, saying "this is a bogus ticket," ejected him without giving him an opportunity to explain.

4. SAME. *Contracts. Cautionary provisions. Unreasonable contracts void.*

A provision on a railroad ticket, printed under the head "Caution," to the effect that in cases of doubt between the passenger and conductor the passenger should pay the sum demanded by the conductor, take his receipt and report the same to the general office of the company, where the same would "receive prompt attention," is mere advice and not a contractual part of the ticket; but, if regarded as a part of the contract, it is unreasonable and void.

FROM the circuit court of Grenada county.

HON. JOSEPH T. DUNN, Judge.

Gortikov, the appellee, was plaintiff in the court below; the railroad company, appellant, was defendant there. From a judgment in plaintiff's favor for $1,000, embracing actual and exemplary damages, the defendant appealed to the supreme court.

The facts are sufficiently stated in the opinion of the court.

*McWillie & Thompson,* for appellant.

Before we can reach a just conclusion touching the motives, acts and declarations of the conductor it is proper to examine the face of the ticket a little closely in order to see the conductor's side of the case and to show, as we think it does show, that Conductor Goodwin did not act unreasonably. It will be seen that there are two errors on the face of the ticket as well as a suspicious circumstance well calculated to have led the conductor to the belief that the plaintiff was riding upon what the witnesses have denominated a bogus ticket. In the first place the ticket was good on the return trip only within ninety days from the date of sale stamped on its back and written on its face, but not later than December 31, 1904. On the back of the ticket was distinctly stamped Ocober 27, 1904. According to this Gortikov has the right to return upon the ticket, other considerations aside for the moment, until the 31st of December, but on the edge of the ticket under the head "Return Limit" are the words "This ticket will be void after the day and month in 1904 punched below," and then in the column just below the quoted sentence the month "December" is punched, which was correct, but the day "14" is punched out, which doubtless was an error. The point, however, is that in respect to the time when the ticket expired it was ambiguous on its face. The most conspicuous part of it showed that it had expired on December 14. It was not presented to the conductor until December 18. No man can say that Conductor Goodwin was not misled by

the ambiguity on the face of the ticket.   He tells us himself that he was so misled and there is not a word in the plaintiff's testimony by way of explanation of this point on the subject of the time when the ticket expired.   There is something else on the face of this ticket which is even worse than an ambiguity. Under the head "Description of Passenger" the ticket is so punched as to show that its original purchaser and the person entitled to ride upon it was a female.   Conductor Goodwin very well knew that Gortikov was not a female nor did that individual pretend to be one.   This certainly was well calculated to make the conductor suspicious of the ticket at least.   While the original purchaser is described by punch mark as being of medium size and height and of middle age, with light eyes and dark hair with no beard, this in no way throws any sort of discredit upon the punched indication that the ticket holder was a female, and the only punch mark which can be claimed to discredit the idea of the owner being a female is the one which describes her or him as having a mustache.   Which discredits the other.   A few women have mustaches.   There is still another matter on the face of the ticket shown by Conductor Goodwin's testimony to have had great weight with him.   The place of the signature "S. Gortikov" on the face of the ticket bears evidence, even without the aid of glasses, to have been abrased.   Conductor Goodwin tells us in his testimony that it was perfectly plain to him that the signature had been tampered with, and while we would not have suspected the forgery, yet when we come to look at it closely, and it is the duty of the conductor to scan these matters carefully, we can see that the conductor was not without warrant in believing that the signature had been altered.   These three things put together, the ambiguity on the face of the ticket touching the time of its expiration; the showing on the face of the ticket by the punch mark that the original purchaser and owner of it was a female and the apparent alteration in the signature on the face of the ticket were well calculated to impress the conductor, as in fact

they did impress him, that Gortikov was seeking to ride upon a ticket to which he was not entitled.

The conductor acted in good faith in this matter and he demanded the payment of fare, five dollars and sixty-five cents, transportation charges from Memphis to Canton, which constituted the conductor's run. The conductor explained to Gortikov the difficulty about his ticket but Gortikov obstinately insisted that his own uncorroborated statement should be received as gospel truth in explanation, something he had no right to demand. Gortikov had money, nine dollars, more than sufficient to have paid his railroad fare to Canton, but he flatly refused and obstinately failed to do what the very ticket which he had bought at a reduced rate enjoined him to do; that is to say, in case of error on the part of an agent or question of doubt between the holder and the conductor the passenger was to pay the conductor's claim, take his receipt, the company agreeing to correct all errors in regard to it, etc. Gortikov ought not to have the benefits of the ticket and at the same time repudiate its burdens, the ticket being, as the one in question was, a special reduced rate ticket, and its provisions and stipulations and contractual obligations being as was the case before the court supported by a valid consideration.

Gortikov was ejected from the train at Grenada; no greater force was used than he himself rendered necessary to accomplish his expulsion. He stayed in Grenada four days awaiting remittances. His actual damages, allowing him everything claimed to its fullest extent, only aggregated $464.50. You can not spell out of this record another cent in his favor unless forsooth it can be said that a jury may regard whatever it sees proper for humiliation and that too when the circumstances are not such as to justify exemplary damages. The jury returned a verdict in plaintiff's favor for $1,000, thus demonstrating, we think, that because of erroneous rulings of the court, especially in the matter of instructions, it was carried off into the realms of

exemplary damages, a matter in our judgment outside of this case.

The court below at the instance of the plaintiff instructed the jury that the provision on the ticket to the effect that in the event a controversy arose between the conductor and the plaintiff as to the right of the plaintiff to travel on the ticket that plaintiff was to pay the fare demanded and to have the same refunded by the company was an unreasonable requirement and not binding upon the plaintiff. It also instructed for the plaintiff, giving what amounted to a peremptory instruction, announcing that if plaintiff purchased the ticket entitling him to passage from Tucson, Arizona, to Chicago, and back, and had himself identified at Chicago, as the original purchaser of the ticket, and that he presented the ticket to the conductor for passage on December 18, 1904, that plaintiff complied, or was willing to comply, with his part of the contract, and that the conductor declined to honor the ticket and put plaintiff off the train, then the jury should find for the plaintiff.

The court also instructed for plaintiff on the subject of actual damages, including in the elements of such damages inconvenience and discomfort which plaintiff suffered by being expelled from the cars, adding that it was not necessary that the inconvenience and discomfort should be shown in dollars and cents.

The ninth instruction given for defendant was also modified by the court in two particulars, and the defendant declined the instruction as altered and it respectfully submits to the court that the modifications were improper. The modifications are shown by being embraced in parentheses.

The jury having rendered a judgment for $1,000 in favor of plaintiff, the defendant moved for a new trial, and the motion having been overruled the case is now brought to this court, all of the matters aforementioned having been made the subject of proper exceptions.

*The Law of the Case.*—There is a difference in law between an ordinary token ticket and a contract ticket, "if the

ticket is a mere check, the passenger is not obliged to read conditions on its back, nor is he bound by them without his express assent.    But, if the ticket purports to be a contract ticket, of a kind and size that no one who could read could glance at it without seeing that it undertakes expressly to govern the conduct of the parties until the passenger arrives at his destination, the passenger will be expected to read it, and if he fails to do so, he will nevertheless be bound by its lawful stipulations.    The fact that it is not signed by the passenger will be immaterial, although any restrictions or limitations upon the passenger's rights must be supported by some consideration in the shape of a reduced fare or otherwise.    But the fact, it is said, that the passenger pays a reduced fare for his ticket will be sufficient to put him on notice that the ticket may contain restrictions upon the carrier's liability, and, by accepting such a ticket, he will be bound by its lawful limitations."    2 Hutch. Carriers (3d ed.) § 1028 (§ 568).    The passenger is bound by the terms of the ticket.    2 Hutch. Carriers (3d ed.), § 1053 (§ 580a), This doctrine is fully recognized in Mississippi. *Howard* v. *Chicago, etc., R. R. Co.,* 61 Miss., 194; *Wilson* v. *New Orleans, etc., R. R. Co.,* 63 Miss., 352.    The ticket evidences the contract and the passenger is bound by its terms, although it be not signed by him.    *St. Clair* v. *Kansas City, etc., R. R. Co.,* 77 Miss., 789.

A contract providing for the identification of the passenger is lawful, and if the passenger does not comply he may be rightfully ejected.    *Mitchell* v. *Southern R'y Co.,* 77 Miss., 907.    The *Holmes case* decides two things:    (1) The initial line is not liable; and (2) the ejection was wrongful only because the passenger's explanation of the error in her ticket was reasonable and substantiated by her baggage check and the way bill for its carriage.    *Ala. & V. R'y Co.* v. *Holmes,* 75 Miss., 371, s.c., 23 South., 187.

The *Holmes case* and the case of *Kansas City, etc., R. R. Co.* v. *Riley,* 68 Miss., 765, s.c., 9 South., 443, are limited.

*Mitchell* v. *Southern R'y Co.,* 77 Miss., 918, s.c., 27 South., 834. Ejection rightful if ticket had expired. *Mitchell* v. *Southern R'y Co.,* 77 Miss., 918, s.c., 27 South., 834. Contract binding passenger to have himself identified before beginning return passage good although not signed by him, and an expulsion for want of such identification is lawful without reference to passenger's statement touching the failure. *Mitchell* v. *Southern Railway Co.,* 77 Miss., 917, s.c., 27 South., 834; *Mosher* v. *St. L., etc., R. R. Co.,* 127 U. S., 390; *Boylan* v. *Hot Springs R. R. Co.,* 132 U. S., 146; *Bethea* v. *Northeastern R. R. Co.,* 1 S. E., 372, s.c., 26 S. Car., 321; *Abram* v. *Gulf, etc., R. Co.,* 18 S. W. (Tex.), 321; *Wenz* v. *Savannah, etc., R. R. Co.* (Ga.), 33 S. E., 970; *Baltimore, etc., R. R. Co.* v. *Hudson* (Ky.), 80 S. W., 454. Contract binding passenger to satisfy conductor of his identity, valid. *Southern R'y Co.* v. *Cassell,* 92 S. W., 281. The courts differ as to whether the party named to determine identity must determine whether he is "satisfied" or whether the law will treat him as being "satisfied" if in truth he ought to have been satisfied.

The South Carolina court makes the party named the judge of whether he was satisfied. *Bethea* v. *Northeastern R. R. Co.,* 1 S. E., 372; while the Kentucky courts hold that he was satisfied if as a reasonable man he should have been. *Southern R'y Co.* v. *Cassell,* 92 S. W., 281.

The Mississippi doctrine in regard to such contracts is that they must be treated as providing for an award by an umpire, selected by the parties for that purpose, and binding unless fraudulent. *Georgia, etc., R. R. Co.* v. *Brooks,* 66 Miss., 583, s.c., 6 South., 467. The United States supreme court adjudges the finding of an agreed person final in the absence of fraud or such gross mistake as implies bad faith or failure to exercise an honest judgment. *Maryland, etc., R. R. Co.* v. *March,* 114 U. S., 549.

Plaintiff must show joint contract in order to hold Illinois

Central Company for Southern Pacific Company's mistake; the sale of a through ticket does not prove even *prima facie* a joint contract. *St. Clair* v. *Kansas City, etc., R. Co.,* 77 Miss., 789; *Felder* v. *Columbia, etc., R. R. Co.,* 27 Am. & Eng. R'y Cas., 264, s.c., 215 Car., 35. Conductor not bound by passenger's uncorroborated statement. *Mitchell* v. *Southern R'y Co.,* 77 Miss., 917.

The case of *Illinois Central R. R. Co.* v. *Harper,* 83 Miss., 560, s.c., 35 South., 764, does not contradict this; there the passenger's statement was not only reasonable but it was not contrary to the contract evidenced by the ticket; it violated only an unknown regulation of the company.

If there be reasonable ground to dispute the right of a passenger to ride on the ticket he has, he should pay the additional fare demanded by the conductor, if able to do so, and damages cannot be increased by obstinate resistance and consequent ejection. *Gibson* v. *Tennessee R. R. Co.,* 30 Fed., 904; *Hall* v. *Memphis, etc., R. R. Co.,* 15 Fed., 67. There is a conflict of authority on this point; but the conflict arises in cases which do not involve the matter of contract. The decisions holding that the passenger is bound to pay fare are not unreasonable, surely not so much so as to render void a contract adopting the rule announced by them, the contract being freely entered into by the passenger, as in this case for a consideration. It will be noted that defendant did not contend in the court below, by requested instruction or otherwise, that a failure by plaintiff to pay the conductor's demand was of itself a defense; the contention was that the jury might consider such failure along with the other evidence *in estimating the sum to be awarded.* If it be said that the provision on the ticket to the effect that the passenger was, in case of a controversy with the conductor, to pay the demand made on him and look to the company for reimbursement is not of the contracts evidenced by the ticket but is a mere notice to the purchaser, the argument is not weakened, because his acceptance of the ticket charged him with notice

of its contents and caused him to know that the procedure named was one which met the company's approval and his very silence on the subject was equivalent to his assent to it.   Hutch. on Carrier (3d ed.), sec. 1028.   He knew that his damages could be reduced by paying a small sum of money and he had more money than was necessary to make the payment. He preferred to be put off the train; to suffer the very things which he did suffer and for which he demanded, and was awarded, exemplary damages, rather than to pay five dollars and sixty-five cents.   This was the estimate placed by the plaintiff himself on the suffering incident to his ejection, and the jury ought to have been permitted to consider it in estimating damages.   Of course if the plaintiff were a mere adventurer seeking grounds upon which to bring a law suit, the case is even stronger on the point in appellant's favor.

It will not do to say that the refusal to pay the conductor's demand is of but little probative force; it certainly tends to diminish any recovery to which the plaintiff might be adjudged entitled, and besides, the probative force of the evidence is for the jury.

The contracts in the case:

(1) The time limit contract; held everywhere to be valid. *Mitchell* v. *Southern R'y Co.,* 77 Miss., 917, s.c., 27 South., 834.

(2) The plaintiff agreed to identify himself to the satisfaction of the defendant's conductor, and that if his identity was called in question the matter should be determined solely by the conductor.   This is valid.   *Southern R'y Co.* v. *Cassell* (Ky.), 92 S. W., 281; Hutch. Car. (3d ed.), sec. 1054.

(3) The plaintiff agreed that in case of error or any question between himself and any conductor he would pay the conductor's claim, take his receipt, etc., and the company bound itself to correct errors.   No sensible reason can be given why such a contract is not valid, especially where the ticket is to be used on foreign roads.

The case of *Cherry* v. *Chicago, etc., R. R. Co.* (Mo.), 90 S. W. Rep., 381, s.c., 109, Am. Rep., 830, 850, 851, is against us to the extent of pronouncing the ticket stipulation unreasonable which requires the passenger to pay the conductor's demand and denies him a recovery if he fail to do so.   Appellant did not ask the court, although the Kentucky case, *supra,* warranted so doing, to treat the passenger's failure to pay as a perfect defense but claimed only that the jury should be permited to consider the failure along with the other evidence in fixing damages in the event the verdict should be for the plaintiff. The Missouri case does not allow of a distinction between regular rate tickets and special ones.   Under conditions of law heretofore allowed in this country, not violating any statute, state or national, can any reason be conceived why a full grown man might not, acting freely, voluntarily and for a valuable consideration, contract with a railroad company for transportation, over its own and another company's line of railroad and bind himself in the contract, in case of error or disagreement with a conductor, to pay that officer's demand and look to the seller of the ticket for reimbursement?   Of course if such a contract be a *nudum pactum* it cannot be enforced, but if it be supported by a valuable consideration it is valid.   The Missouri case tells us that the law does not require that a passenger shall buy that which he has already bought and paid for.   Of course not, but his contract may require him to pursue a designated course of procedure upon the happening of certain events and his contract may obligate him to carry a sufficiency of money to pay as required to do by the contract.   This is the whole of it.

The appellee's counsel tells us in his brief that he has been able to find four and only four cases in point, all of which he claims to be in his favor, but he cites only three cases, one of which, *Cherry* v. *Chicago, etc., R. R. Co.,* we have already noted and the other two are not in point.   One of them, *Georgia R'y. etc., Co.* v. *Baker,* 125 Ga., 562, 54 S. E., 639, 7 L. R. A. (N.

S.), 103, was a street railway case and a controversy about a "transfer" and some stipulations printed upon the transfer card. The pretended contract was simply void as a *nudum pactum*; the matter printed upon the transfer card was not brought to the attention of the passenger, he was not given an opportunity even to read it. See the quotation from Hutchison on Carriers on p. 17 of this brief. The other case cited, *O'Rourke* v. *Citizens, etc., R'y Co.*, 103 Tenn., 124, 76 Am. St. Rep., 639, was also a street railway case and the same observations are applicable to it; the contract there under consideration was a *nudum pactum*. When counsel wrote of four cases and only cited three he must have had in mind one other, *Southern R'y Co.* v. *Cassell* (Ky.), 92 S. W., 281, which is decidedly favorable to appellant.

*Exemplary Damages.*—"The conductor is not obliged to accept an improper ticket and in the absence of evidence of a willful omission of the first conductor (the one who issued it), to properly punch the transfer ticket or of the second conductor to accept it when he knew that his duty required him to do so, the company is not liable for punitive damages by reason of the passenger's ejection without insult, rudeness or unnecessary violence." *Vicksburg, etc., R. R. Co.* v. *Marlett*, 78 Miss., 872, s.c., 29 South., 62. Error in issuing an excursion ticket not cause for punitive damages. *Illinois, etc., R. R. Co.* v. *Moore*, 79 Miss., 766.

The case of *Illinois, etc., R. R. Co.* v. *Harper*, 83 Miss., 560, s.c., 35 South., 764, does not conflict with the *Marlett case* or the *Moore case*. The *Harper case* was peculiar; the woman was rightfully on the train according to the ticket, nor did the conductor misunderstand the ticket. He put her off because of an undisclosed regulation of the carrier.

Hutchinson, in 2 Hutchinson on Carriers (3d ed.), sec. 1065 after reviewing the authorities, lays down the rule to be " As between the conductor and passenger, and the right of the latter to travel, the ticket produced must be conclusive evidence,

and he must produce it when called upon as the evidence of his right to the seat he claims.   Where a passenger has purchased a ticket and the conductor does not carry him according to his demand, or if the company, through the mistake of its agent, has given him the wrong ticket, so that he has been compelled to relinquish his seat or pay him a second time in order to retain it, he would have a remedy against the company for a breach of the contract, but he would have to adopt a declaration relying upon such breach and not upon the ejection.   The application of this rule does not extend, however, to the case of a passenger who has been furnished with a ticket on its face and declared by the company's agent to be good, but which in fact was not so according to the company's regulations," and the author cites *Illinois, etc., R. R. Co. v. Harper,* 83 Miss., 560, s.c., 35 South. Rep., 764, among other cases as supporting the text, thereby showing the distinction between the *Harper case* and the *Mitchell case* and the other Mississippi cases.

*Mayes & Longstreet,* on the same side.

*William C. McLean,* for appellee.

In *Riley's case,* 68 Miss., 765, 9 South., 443; *Drummond's case,* 73 Miss., 813, s.c., 20 South., 7; *Holmes' case,* 75 Miss., 371, s.c., 23 South., 187; *Harper's case,* 83 Miss., 561, 35 South., 764, it is squarely held by this court that the ticket is not conclusive evidence of the extent of a passenger's right to travel, and further that it is the duty of the conductor to accept any reasonable explanation offered by the passenger, and that the conductor is bound to accept the ticket, or take the risk of having the company mulched in damages, in the event the conductor makes an error.   The only reason why the conductor did not honor this ticket, was, first, because he claimed that it was issued originally for a female; second, that the plaintiff was not the original purchaser, and third, that the right to ride

on the ticket had expired.   The evidence in the case clearly demonstrates, first, that the plaintiff was in truth and in fact the original purchaser of the ticket.   Second, that the time limit had not expired.   While the punch marks on the margin of the ticket show that it expired on December 14 (the plaintiff was ejected on December 18) yet, the provision of the ticket provides that the ticket was good for a return trip, within ninety days from the date of sale stamped and written on the ticket, but not later than December 31, 1904.   The ticket was sold on October 27, and, therefore, was good until December 31—less than ninety days intervening between the date of sale and December 31.   The agent who sold this ticket testifies positively that if the punch marks indicate that the limit expired on December 14, it was a mistake.   The rule is well settled in this state, first, that a railroad company cannot contract against its own negligence.   *Railroad Co.* v. *Grant,* 86 Miss., 565, s.c., 38 South., 502.   Second, that a passenger is not required to examine his ticket before entering upon a railroad journey, in order to ascertain whether it is correct or not; it would be prudent to do so, but not doing so, will not vitiate a contract that is made with a railroad company.   *Railroad Co.* v. *Drummond,* 73 Miss., 720, s.c., 20 South., 7, and this court in *Holmes' case,* 75 Miss., s.c., 23 South., 187, says "the law does not require a purchaser of a ticket from a ticket agent to examine it, and see what it purports to be, though the ticket on its face is insufficient, the passenger who is ejected may recover for the ejection, when the passenger tells the conductor that he has paid his fare, and states the amount he paid to the ticket agent, who told him it was good.   It is the duty of the conductor to accept the passenger's statement, until he finds out it is not true, no matter what the ticket contains in words, figures or other marks."   *Riley's case,* 68 Miss., 765, 9 South., 443; *Holmes' case,* 75 Miss., 389, s.c., 23 South., 187.   Hutchinson on Carriers, sec. 580j, and authorities cited on page 682.   As a matter of fact, the conductor did not

eject the plaintiff because , the punch marks indicated that the ticket had expired—this was a mere afterthought, because the conductor testifies that he never read the ticket, that just as soon as he laid his eyes on the ticket, he saw that the ticket originally was issued to a female, and that it was a bogus ticket; this question about the ticket having expired arose in the case, after the lawyers got in the case. But, however that may be, the proof is clear that the ticket had not expired. In addition to the proposition laid down and repeatedly affirmed by this court, that the ticket is not conclusive evidence of extent of a passenger's right to travel thereon, but that the passenger has the right to stand upon his contract, as originally made; but in addition to that, it is elementary that the whole of a written instrument will be looked to in construing it, and that this rule of contract is applicable as to the limit of time, within which the passenger has the right to ride on the ticket. See *Mitchell* v. *Railroad Co.,* 77 Miss., 922, s.c., 27 South., 834, in which this court says:—"In all these cases, it may well be said that the company's reservation must be taken most strongly against it, and it should have clearly fixed the precise limitation of use or passage." The ticket as shown on its face is ambiguous, and consequently the plaintiff had the right to use this ticket until December 31. This appears upon the ticket itself; but when we take into consideration the evidence (and there is no doubt but what the evidence shows that the agent in punching, made a mistake) it is clear that the contract, as was intended to be made both by the plaintiff and the Railroad Co. gave the plaintiff until December 31, in which to travel on the ticket. S. H. Cooper, the agent of the Southern Pacific R. R. Co., who sold this ticket to the plaintiff, testifies that the punch marks were evidently a mistake, and that the ticket was good until December 31.

The defendant relied upon the provision written on the ticket that, in case of error on the part of the agent, or question

of doubt between the holder and conductor, the purchaser should pay the rate claimed, take his receipt, and all errors or irregularities report to the general office, and the same will receive prompt attention. This provision is under the head of "Caution." In the first place, it is very clear upon an inspection of the ticket, that the above provision forms no part of the ticket. The ticket shows on its face that there are only ten provisions in the ticket, and the above is not one of those provisions. This provision also not only is not a part of the contract, but it was simply advisory. It simply advises the holder of the ticket that he could pay the claim, and that in the event of so doing, when the same was presented to the general office, would receive prompt attention. There is no provision that the amount paid would be refunded, but simply that it would receive prompt attention. All of the authorities agree that this provision is no part of the contract. Hutchinson on Carriers, secs. 580, 666, and authorities cited. But if this were a part of the contract, and had been expressly written in the contract, all of the authorities agree that such a provision is unreasonable and void. After a very close examination of the authorities upon this subject, we are unable to find but four authorities, and they all agree that such a provision is unreasonable and void, and not binding on the passenger. It is unnecessary to enter into a discussion of the question, as a full discussion will be found in the following authorities: *Cherry* v. *C. & A. R. R. Co.* (Mo.), s.c., 109 Am. St. Rep., 830; *G. R. R. Co.* v. *Baker,* 7 L. R. A. (n. s.), 103; *O'Rourke* v. *R. R. Co.,* 103 Tenn., 124, s.c., 76 Am. St. Rep., 639. All of the above authorities are squarely on this proposition.

The evidence shows that the plaintiff was willing to satisfy the conductor that he was the original purchaser of the ticket, but the conductor did not call on the plaintiff for any explanation whatever, but at once declared that the ticket was a bogus ticket, that had been originally issued to a female and was bought by the plaintiff from a scalper. Under such circum-

stances, the law is well settled that the passenger was not required to offer any explanation. *N. & W. R. R. Co.* v. *Anderson,* 96 Va., s.c., 44 Am. St. Rep., 884.

The evidence in this case clearly demonstrates, beyond the peradventure of doubt, that the conductor was guilty of wilfullness in ejecting the plaintiff. In *Harper's case,* 83 Miss., 569–570, s.c., 35 South., 764, this court held that it was not only the duty of the conductor to listen to the explanation, but having heard it as he did, it was a wrong, a wilful wrong warranting the imposition of exemplary damages to put the passenger off the train; that it was none the less a wilful wrong, because he acted in a gentlemanly manner, and was guilty of no insolent conduct. The case at bar is a much stronger case for wilfullness on the part of the conductor than was the *Harper case,* for the reason that in *Harper's case,* an explanation was made by the passenger, and the conductor would not heed it. Whereas in the case at bar, the conductor not only would not give the plaintiff the opportunity of making an explanation, but absolutely declined to hear anything at all—did not even call upon the plaintiff for an explanation, but at once characterized and denominated the ticket presented for passage as a bogus ticket. If the conductor had listened to the explanation of the plaintiff, the plaintiff would have satisfied him that he was the original purchaser of this ticket. The cause was properly submitted to the jury, and was properly decided on the facts.

We call the attention of the court to the fact that the defendant obtained instructions from the court (which were clearly wrong) to the effect that if the conductor acted in good faith, and reasonably believing that the plaintiff was riding on a bogus ticket, the jury would find for the defendant. We, of course, cannot complain of this instruction, as a verdict was rendered for the plaintiff, and we referred to it, simply to show that the jury did not believe that the conductor acted in good faith, or that he was reasonable in believing that the plaintiff

was not the original purchaser of the ticket. The plaintiff was grossly and outrageously treated, and the defendant should congratulate itself that it escaped with so small a verdict. It is submitted that the cause should be affirmed.

Argued orally by *R. H. Thompson,* for appellant, and by *Wm. C. McLean,* for appellee.

CALHOUN, J., delivered the opinion of the court.

This is an action for damages for being forcibly ejected from a railroad train. It is absolutely certain that Mr. Gortikov bought, paid for, and received a round-trip ticket at Tucson, Ariz., good from that place to Chicago, Ill., and return, over the route on which he was ejected. On that ticket and over that route he went without question from Tucson to Chicago, and was on his return; and it is also certain that, pursuant to the directions of his ticket, he identified himself to the agent at Chicago and returned on that same ticket to and south of Memphis, Tenn., and was ejected at Grenada, Miss. The cause of his being put off, according to his testimony, was that the conductor said it was a "bogus ticket," claiming that the plaintiff had purchased it from a scalper, because the original ticket had been issued to a female. Whether the ticket was in fact, or not, when bought, punched in the wrong place, so as to show that it was issued to a female, is in our view wholly immaterial. That was a matter for the convenience of the railroad company, and no passenger should be held to be bound by the mistakes of the agent in using his punch. It will be noted that, in the description of the passenger made by the agent at Tucson, the appellee, plaintiff below, is perfectly described, even to the fact of his having a mustache.

It is also absolutely certain that the ticket, according to the actual contract made at its purchase, had not expired by several days at the time of the expulsion from the train. This is shown by the appellee's testimony, and by the agent who sold him the

ticket, and on the face of the ticket, as will appear hereinafter, and, if the agent made a mistake in punching the passenger should not be held bound. But, according to the testimony for the plaintiff below, no other point was made by the conductor in the colloquy between him and the appellee except that it was issued to a female, and he refused to listen to any explanation or any proofs of identification from the passenger, and there was evidence that the plaintiff below was prepared to make explanation showing his identity, and would not be listened to, that he had about him evidence which would satisfy any reasonable man that he himself was the original purchaser of the ticket and the identical man for whom it was intended. The conductor did not even call upon Gortikov for any explanation, and would not hear it when it was offered. There was also evidence that he was forcibly put off the train, the conductor and brakeman taking hold of him and making him leave the car, and that at the door the conductor told the marshal of Grenada he wanted him to take the passenger out of the car, and the marshal told him that it was not his business and declined to do so. According to the testimony of the plaintiff there was no talk from the conductor on the subject of an erasure or change in the name until the trial of the cause. However, we have seen the identical ticket, sent to us by consent, and it is perfectly manifest that there never was any erasure. This ticket shows that it was bought October 27, 1904, and that the return limit was punched so as to show December 14, although that very ticket provides, as all such did, that it is good for ninety days from its date, to be not later than December 31, 1904. This is conclusive of the contract, regardless of the mistake which the agent says he made in punching the ticket, and was a matter for explanation, to say the least of it, if the conductor had made the point or been willing to accept explanation. In any case it is the duty of a conductor, when doubt arises as to a ticket, whether a general ticket or a special touring ticket with reduced rates, to listen

to and accept any reasonable explanation offered, or take the chances.  *Railroad Co.* v. *Harper,* 83 Miss., 560, 35 South., 764; *Railroad Co.* v. *Holmes,* 75 Miss., 371, 23 South, 187; *Railroad Co.* v. *Riley,* 68 Miss., 765, 9 South, 443, 13 L. R. A., 38, 24 Am. St. Rep., 309; *Railroad Co.* v. *Drummond,* 73 Miss., 813, 20 South., 7—cited by counsel for appellee.  This court is in line with those cases holding that a passenger is not required to see that the selling agent of the ticket made the proper punch marks.  The fact that the passenger did not do so does not destroy the validity of the contract.  *Railrodd Co.* v. *Holmes,* 75 Miss., 371, 23 South, 187.

In the case at bar it was clearly the conductor's duty to accept explanation, regardless of the punch marks.  But, as we have said, the evidence on the part of the plaintiff is that the conductor made no such objection to the ticket, but put his refusal explicitly on the ground that the ticket had been issued to a female, and was a "bogus ticket."  Looking to all that appears on this ticket, the expulsion was unnecessary, and from the circumstances shown on the part of the plaintiff it is our opinion that they warranted the recovery of both actual and exemplary damages.  Examining the whole ticket, it is clear that the contract was not to expire until December 31, and, if the punch mark contradicted this, it should not have been considered by the conductor, because the printed contract should be taken most strongly against the railroad company which issued it.

It · is useless to comment on the provision of the ticket, under the head of "Caution," to the effect that, in cases of doubt between the passenger and the conductor, the passenger should pay the rate which the conductor demanded, and get a receipt from him, and report to the general office, and then "the same will receive prompt attention."  It is simply advice, and no part of the ten provisions in the ticket.  It is a suggestion to the passenger that he could pay the fare, and, if he did it, the general office, on his report, would give it

prompt attention, without even specifying that the amount in cash he had paid would be refunded. That this is not a part of the contract is plain. Hutchinson on Carriers, p. 666, § 580, and the authorities there cited, referred to by counsel. Even if a part of the contract, it would be unreasonable and void, as held in the cases cited in the notes to *Cherry* v. *C. & A. R. R. Co.,* 109 Am. St. Rep., 830; *Railroad Co.* v. *Baker,* 7 L. R. A. (n. s.), 103, and *O'Rourke* v. *Citizens' Street Ry. Co.,* 76 Am. St. Rep., 639, referred to by counsel. The circumstances developed by the evidence for the plaintiff below in this case and believed by the jury to make it a willful wrong in the conductor to eject without listening to explanation. *Illinois Cent. R. Co.* v. *Harper,* 83 Miss., 570; 35 South, 764, 64 L. R. A., 283, 102 Am. St. Rep., 469.

Taking the instructions as a whole, we find nothing authorizing this court to reverse.

*Affirmed.*