GALVESTON, H. & S. A. RY. CO. et al. v.
WISEMAN.†

(Court of Civil Appeals of Texas. March 29, 1911. Rehearing Denied April 26, 1911.)

1. CARRIERS (§ 262*)— PASSENGERS — BREACH OF CONTRACT—DEFECTS IN TICKETS.

Where the defect in a passenger ticket arises from the fault of the carrier's agent, the carrier is liable to the passenger for the damages sustained by the refusal of the conductor to accept the ticket.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 262.*]

2. CARRIERS (§ 262*)—PASSENGERS—DEFECTS IN TICKETS.

Where a passenger holding a round-trip ticket, which was good only for return passage, after his identification by signature on the ticket in the presence of an agent of the carrier, who should witness the signature and stamp the ticket, did all he could to perform the conditions imposed on him, but the agent failed to stamp the ticket, and thereafter a conductor placed a stamp thereon, and a subsequent conductor refused to accept the ticket as stamped, the carrier was liable to the passenger for the damages resulting from the conductor's refusal to accept his ticket and demanding payment of fare under penalty of ejection from the train.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 262.*]

3. CARRIERS (§ 234*)—PASSENGERS—CONTRACT OF CARRIAGE.

A contract of carriage evidenced by a ticket is governed by the law of the state where made.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 965; Dec. Dig. § 234.*]

4. CARRIERS (§ 259*)—PASSENGERS—TICKETS— CONTRACT.

A coupon round-trip ticket for carriage by several carriers sold by the initial carrier acting only as agent for the connecting carriers represented in the ticket and not responsible beyond its own line is not a ticket for a continuous trip either going or returning, and is not an entire contract of the initial carrier, nor the joint contract of all the carriers, but the body of the ticket and each coupon constitute a separate contract between the carrier and the particular carrier over which the coupon is good for transportation, and hence a stop-over by the passenger does not invalidate his ticket and coupon good for transportation by a carrier from the point of the stop-over to the end of its line.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1033; Dec. Dig. § 259.*]

5. CARRIERS (§ 270*)—PASSENGERS—TICKETS— NEGLIGENCE OF CARRIER.

Where a coupon round-trip ticket issued by the initial carrier was not good for the return passage unless validated in the manner prescribed, and the initial carrier made the agent of the terminal carrier the agent to prepare the ticket for the return trip, the negligence of the agent was the negligence of the carrier on whose line of road the passenger suffered injury from a refusal of a conductor to accept the ticket, and, where the injury occurred on the initial carrier's line, it must answer for the consequences thereof.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1064–1066; Dec. Dig. § 270.*]

6. CARRIERS (§ 277*)—PASSENGERS—REFUSAL TO ACCEPT VALID TICKET — MITIGATION OF DAMAGES.

Where a passenger has a ticket good for passage, but the conductor refuses to accept it, and demands payment of fare under penalty of ejection, the passenger's failure to pay the fare demanded with the view of subsequently settling the question with the carrier could not be considered in mitigation of the passenger's damages.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1082–1084; Dec. Dig. § 277.*]

Appeal from District Court, Wilson County; E. A. Stevens, Judge.

Action by L. B. Wiseman against the Galveston, Harrisburg & San Antonio Railway Company and others. From a judgment for plaintiff, defendants appeal. Affirmed.

Baker, Botts, Parker & Garwood, W. B. Teagarden, and B. G. Haskell, for appellants.

NEILL, J. This suit was brought by Wiseman against the Galveston, Harrisburg & San Antonio Railway Company, the El Paso & Northeastern Railway Company, the El Paso & Southwestern Railway Company, and the Alamogordo & Sacramento Mountain Railway Company to recover damages alleged to have been caused by the wrongful conduct of the conductor and auditor of appellant company towards the plaintiff while a passenger en route from El Paso to San Antonio, on which train he was entitled to transportation and kindly and courteous treatment from appellant's servants and employés by virtue of a valid contract and ticket issued to him by said railway company. He alleged: That the conductor of the train upon inspecting his ticket, and in the presence and hearing of the passengers, repeatedly threatened to put him off the train if he did not pay his fare. That believing the conductor would carry his threats into execution, and not having sufficient money with him to pay his fare, and being unacquainted with the passengers, to prevent being ejected from the train as he apprehended he would be unless he acceded to the

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

† Writ of error denied by Supreme Court.

conductor's demands, he was induced to borrow $10 from a stranger, which, together with the money he had on hand, he tendered to the conductor for his passage, which was refused, the conductor then observing that he believed plaintiff was the original purchaser of and owner of the ticket which plaintiff had presented to him; that the plaintiff was greatly annoyed and distressed at the action and threats of the conductor toward him, and humiliated at being placed in such position thereby as required him to appeal to a stranger for financial assistance to prevent being ejected from the train on which he was entitled to transportation by virtue of his contract and ticket which he had theretofore procured and purchased from appellant. That plaintiff was then carried to Sanderson en route to San Antonio on said train, where the auditor of appellant company demanded his ticket, which, when exhibited to him, he pronounced invalid and demanded payment of fare to San Antonio in such a manner as caused him to fear and induced him to believe that, unless he paid it, the auditor would have him put off the train, and that induced by such fear and belief he paid his fare as demanded, which took all the money he had with him, he having theretofore returned the money he had borrowed from the stranger, and was compelled to rely upon the hospitality of strangers for something to eat during the remainder of his journey. That by reason of the wrongful action and treatment toward him by said conductor and auditor he suffered great mental anguish and humiliation to his damage in the sum of $500, besides the loss of $9.20 which he paid the auditor on his unlawful demand for his fare. The plaintiff prayed for the recovery of these amounts, and, in addition thereto, for the sum of $1,000 as punitory damages. The defendants answered by a general denial, and specially pleaded plaintiff's failure to perform certain conditions in his contract of carriage stipulated therein. The case was tried before a jury and resulted in a verdict in favor of all the defendants except the appellant and in a verdict in plaintiff's favor against it for $9.20, the amount paid the auditor, and the further sum of $250 as compensation for mental anguish.

### Conclusions of Fact.

The plaintiff on July 17, 1909, purchased from appellant's agent at San Antonio, Tex., a ticket, good for one first-class passage and return from San Antonio to Cloudcroft, N. M., subject to the following contract:

"1st. When officially stamped and presented with coupons attached.

"2nd. It will not be accepted for passage unless this Contract is signed in ink, by the purchaser, and also by the Agent for the issuing Company.

"3rd. In selling this ticket the Gal. Har. & San Antonio R'y Co. acts only as agent for the other lines represented in it, and is not responsible beyond its own line, either for injury to the passenger, or for damage to or loss of baggage carried under it.

"4th. Baggage liability is limited to wearing apparel not to exceed One Hundred Dollars ($100) in value for a whole ticket and Fifty Dollars ($50) for a half ticket, unless a greater value is stated and paid for at time baggage is checked.

"5th. This Ticket is Not Transferable.

"6th. It is subject to the stop-over regulations of the lines over which it reads.

"7th. It is good for *going* passage only until date cancelled by punch mark under the head of 'Going Trip.'

"8th. It is only good for Return Passage of original purchaser after identification by signature on back of this contract (and by other means if required) in the presence of an authorized agent of *the terminal line at destination of ticket*, who must witness the signature, date and stamp, and cancel with punch on back hereof the date of identification, and this Ticket, with Return Coupons attached, will then be good for Return Passage if used within the number of days indicated in the margin hereof, under head of 'Return Transit Limit,' which shall be reckoned from date of identification, but shall not in any case be later than date cancelled under head of 'Return Trip,' after which date this Ticket is void.

"9th. This Ticket and Coupons are void if they show any alterations or erasures, or if more than one date is cancelled under head of 'Going Trip,' 'Return Trip,' or 'Date of Identification,' or if more than one limit is cancelled under head of 'Return Transit Limit.'

"10th. No person other than the original purchaser can acquire any property in this Ticket or right thereto, and the parting possession hereof in any manner by the original purchaser, is of itself an abandonment of all further rights, except to an authorized officer of the Company issuing same, for purpose of redemption, and no rights in this Ticket can be, in anywise acquired, other than are herein expressly given.

"11th. The description of my personal appearance indicated by the words opposite the punch mark in the margin hereof is correct.

"12th. No Agent or employé of any of the Lines named in this Ticket has any power to alter, modify or waive in any manner any of the conditions of this Contract.

"13th. In consideration of the reduced rate at which this Ticket is sold, I agree to all the above conditions, and that unless they are fully complied with, this Ticket shall be void, and upon presentation may be taken up and full fare collected.

"I also agree to sign my name and to identify myself whenever called upon to do so by an Agent or Conductor of the Lines over which this Ticket reads, and on my failure

or refusal to do so that this Ticket shall become thereafter void."

To the contract were annexed coupon tickets of the several railroads over which the transportation was to be made. In going the contract of carriage, as shown by the several coupons, was (1) by the Galveston, Harrisburg & San Antonio Railway Company from station stamped on back (San Antonio) to El Paso; (2) by the El Paso-Northeastern System from El Paso to Alamogordo; and (3) by the Alamogordo & Sacramento Mountain Railway from Alamogordo to Cloudcroft. In returning (1) over Alamogordo & Sacramento Mountain Railway from Cloudcroft to Alamogordo; (2) over El Paso-Northeastern System from Alamogordo to El Paso; and (3) over Galveston, Harrisburg & San Antonio Railway from El Paso to station stamped on back (San Antonio). The contract bearing these coupons was signed by the plaintiff and the agent of appellant at San Antonio, Tex., on the day it bears date, was punched so as to show that on the going trip it would be void after July 20th, and on return trip after August 17th, and so punched at places on margin for description of purchaser as to describe plaintiff as "white, male, medium size, dark hair and medium height." On the going trip the plaintiff had no trouble on account of the contract, but was carried over the several railway companies' lines, whose coupon tickets were annexed to it, from San Antonio to Cloudcroft before the time limit on that trip expired. On August 14, 1909, plaintiff, at Cloudcroft, went before the agent of the Alamogordo & Sacramento Mountain Railway at that point, presented his ticket to him for validation, identified himself as the original purchaser, signed the same on back as required, his signature being witnessed by said agent, who signed his name as evidence thereof under plaintiff's (the date of identification, "8/14/1909," being written in ink on back of the ticket under their signatures), and canceled such date with punch on the margin thereof, but failed to stamp the same as he was required to do. The agent then, telling plaintiff that the ticket was all right, handed it to him with the return coupons attached, who, without noticing or knowing that the agent had failed to stamp it, started on his return trip. The conductor on the train of the Alamogordo & Sacramento Mountain Railway accepted the coupon on the ticket of said railway for plaintiff's transportation from Cloudcroft to Alamogordo without any objection to the omission of the stamp. Plaintiff arrived at Alamogordo on the same evening, which was Saturday, and remained there until the following Monday morning, when he went to El Paso on a train of the El Paso-Northeastern System, the coupon of said railway system from Alamogordo to El Paso being accepted by the conductor without questioning its validity. Plaintiff on Monday evening, Au-

gust 16, 1909, started from El Paso to San Antonio, and in doing so presented his ticket with the coupon of the Galveston, Harrisburg & San Antonio Railway for transportation over its line from El Paso to San Antonio attached thereto. He presented the ticket to the agent at the depot gate (through which passengers can only pass to their respective trains after having presented their tickets for inspection and approval by such agent or gatekeeper), who, after examining it, pronounced it all right, and allowed plaintiff to pass through to his train. The plaintiff then boarded appellant's train en route for San Antonio, and took a seat in one of the cars. As the train was running out of El Paso, the conductor went to him and asked him for his ticket, which he handed him. Then, to use plaintiff's language, the following altercation took place between them: "He says: 'This ticket isn't any good.' I says: 'What in the world is the matter with it?' He says: 'It is not stamped.' That was my last day then. I had time to get into San Antonio on the ticket, and he says it is not stamped. I said: 'I can't help that.' And he says: 'You have got to go back to Cloudcroft and get this ticket stamped.' I said: 'Go back to thunder, when I get back to Cloudcroft this ticket will be void. I can't go back. I can't go back.' He says: 'Well, you will have to get off or pay your fare.' I said I didn't have enough money to pay my fare. I didn't have over about $9 with me, just about enough to get into San Antonio. The fellow said: 'You will have to get off. I can't honor this ticket. It isn't worth a continental.' I says: 'But I am the man, this man here, don't you see these signatures, that is L. B. Wiseman. I signed that.' I tried awfully hard to explain these matters to these people, because I didn't want to be put off. I said: 'Here are letters, don't you see, L. B. Wiseman? Here is my address with my name'—showed them my card, showed them my grip with the name L. B. Wiseman. He says: 'You will have to get off. I will put you off.' I says: 'If you are going to put me off, put me off right now. I have got a little bit of money with me. I want to get back to El Paso so I can get some money.'" This colloquy occurred in the presence and hearing of a number of passengers on the train. The plaintiff, having only about $9 with him, borrowed $10 from a stranger, and then tendered payment of his fare to San Antonio to the conductor, but he refused to take it. About 4 o'clock next morning the conductor went to plaintiff, who testified that they had the following conversation: "He says: 'I want to see that ticket.' He says: 'I know you are the man. That fellow up there just failed to stamp it. I will take it and fix it up so it will do to ride on.' He says: 'I believe what you say about it, that you are the man that is the owner of this ticket; but,' he says, 'I have got to fix it up so you can pass

on down the road, that man down there will roar like a bull in a cabbage patch.' I says: 'I don't care. I want to ride on this ticket. I have not got money enough to ride on without borrowing money.'" The conductor then took his ticket and afterwards brought it back to plaintiff stamped, and said: "Now, it will pass." An agent of plaintiff, called an auditor, soon after this got on the train at Sanderson, and then as to what occurred plaintiff testified as follows: "When I got to Sanderson, the auditor said: 'I can't honor this ticket.' I says: 'What is the matter with it? It is my ticket.' He says: 'It has been stamped.' I says: 'I am getting awful tired of you fellows, this railroad company, treating me in any such manner as this, and you fellows have been whooping me up ever since I left El Paso, threatening to put me off the train.' He says: 'I can't help it, you either pay your fare or get off this train.' I says: 'Put me off. I am tired of you people bothering me this way. What right have you got to be coming around treating me in any such manner as this? I am L. B. Wiseman. I am the man that signed that ticket,' and I showed him an envelope with my name, showed him my grip, showed him letters, showed him cards, and another man on the train told him I was the man. I don't know whether he knew me or not. I told him: 'You will have to put me off.' He said: 'Well, I don't like to do that.' I said: 'I don't like to have you either, but I don't like to be done this way.' I said: 'I have got enough money now to pay my fare. Suppose I didn't have?' He said: 'You would be in one hell of a shape.' I said I thought so, too. It took every dollar I had. I paid the man the $10 back. I had $9.20 to get into San Antonio. I depended on a friend who was on the train to buy my dinner. I wouldn't ask him, I would have starved first, but he knew my condition, and he took me on the dining car and gave me my dinner, and I enjoyed it, too. It was my ticket, and I didn't do a thing in the world but try to ride on that ticket. Everything that was done was done with the intention of trying to ride on this ticket."

It is undisputed that the stamp on the back of the ticket, placed there when in the hands of the conductor at his instance, was not the stamp of the agent at Cloudcroft, but the stamp of some ticket agent of appellant. It is not obliterated, but the impression of the stamp is not made deep enough to show distinctly the ticket office to which it belongs, but it seems to be appellant's office at Alpine, a station between El Paso and Sanderson. In refusing to honor the ticket on account of the appearance of the stamp on its back, the auditor told plaintiff in a businesslike way that he could not honor it and would have to collect fare, and would have to put him off the train if he did not pay, saying: "I'll go get the conductor and put you off. It will take two of us."

He used no abusive language nor applied any approbrious epithets towards plaintiff; but was firm and determined in his manner, impressing him with the belief that he would be put off the train if he did not pay the fare demanded; and, laboring under such belief, plaintiff, to prevent being ejected from the train, paid him the amount demanded, $9.20, for his fare from Sanderson to San Antonio, which left him without any money at all.

By reason of the wrongful action of appellant's conductor and auditor towards plaintiff in pronouncing his ticket invalid and threatening to put him off the train, in the presence and hearing of the passengers, he was greatly distressed and humiliated to his damage, in addition to the amount wrongfully exacted from him, in the sum of $250, as found by the jury.

### Conclusions of Law.

1. Under the first assignment of error, it is contended that, before plaintiff's ticket was good for return transportation, it was essential that it should bear on its back, at the place provided therefor, the stamp of the ticket agent at Cloudcroft, and that it was plaintiff's duty to have this done, and that, if he negligently failed to have such stamp placed thereon, appellant's conductor and auditor were warranted in rejecting the ticket, and plaintiff would not be entitled to recover. A special charge embodying this proposition was prepared and requested by appellant and its denial is the subject of the assignment.

[1] The authorities differ as to the liability of a railway company for ejecting a passenger who from the fault of its agent presents a defective ticket for his transportation. But in this state the weight of authority is that, if the defect in the ticket arises from the fault of its agent, a common carrier will be liable. This is shown by the opinion of the Supreme Court in T. & P. Ry. Co. v. Payne, 99 Tex. 46, 87 S. W. 330, 70 L. R. A. 947, 122 Am. St. Rep. 603, a case as nearly in point as can be found. See, also, S. P. Co. v. Bailey, 91 S. W. 820; M., K. & T. Ry. Co. v. Mitchell, 47 Tex. Civ. App. 307, 105 S. W. 827; Stevens v. Wichita Valley Ry. Co., 45 Tex. Civ. App. 196, 100 S. W. 807; G., C. & S. F. Ry. v. Copeland, 17 Tex. Civ. App. 55, 42 S. W. 239; I. C. R. R. Co. v. Gortikov, 90 Miss. 787, 45 South. 363, 14 L. R. A. (N. S.) 464, 122 Am. St. Rep. 324; Moore v. Central R. R. Co., 1 Ga. App. 514, 58 S. E. 63; S. R. Co. v. Wood, 114 Ga. 140, 39 S. E. 894, 55 L. R. A. 536.

[2] Here, as in the Payne Case, the appellee did all he could to perform the condition precedent imposed on him by the contract, hence his right to transportation was complete and had in the ticket all the evidence which the contract exacted of him to furnish; that which was lacking being only the evidence which the appellant had undertak-

en to furnish for the information of its employés. The placing of a different stamp on the ticket, as is shown by our conclusions of fact, was not plaintiff's act, but that of appellant's conductor to whom it was presented, and who, under the facts and law, should have accepted it as it was presented. We think, therefore, the charge was properly refused.

2. The second assignment complains that the court erred in not embracing in the general charge a proper instruction as to the legal effect of a negligent failure on plaintiff's part to have his ticket properly stamped and validated at Cloudcroft; the omission having been called to the court's attention by a special charge requested by the appellant. The special charge referred to is the one which is made the subject of the first assignment, and for the same reason that we overruled it we overrule this one.

3. The refusal of a special charge requested by appellant peremptorily instructing the jury to return a verdict in its favor is made the predicate of the third assignment.

The propositions presented under this assignment are:

"(1) Since it was conceded by plaintiff, and shown without doubt, that when he tendered the ticket to appellant's conductor and auditor it did not bear the stamp of the Cloudcroft office, and when presented to the latter it bore a mutilated stamp, and was in no sense properly validated as the contract required, it was, under the tariff, the contract, and the law, void, and appellant's agents were justified in all that was done, and under his pleadings and the facts he was, as a matter of law, not entitled to recover.

"(2) It was conceded by appellee, and is settled by the facts peradventure, that appellee took a stop-over on his return trip at Alamogordo in violation of the express terms of the contract, and his contract was therefore void, when presented to appellant's conductor and auditor.

"(3) All the carriers, parties to the contract, the breach of which was expressly declared upon, being before the court, and as-suming, for the purpose of argument, that plaintiff was guilty of no wrong or negligence that would bar his right to recover, this appellant was entitled to a judgment as matter of law because the damages claimed resulted directly and proximately from the fault of the terminal carrier's agent, for which this appellant was not by contract or otherwise liable, and the judgment, if plaintiff was entitled to any, should have been against the terminal company.

"(4) When the conductor first called plaintiff's attention to the fact that his ticket was not stamped, or when the auditor did so, he should have paid the fare without a disturbance, and pursued his remedy against the terminal line, the wrongdoer, and he could not by his own obstinacy compel appellant's agents to threaten to expel him from the train, and thereby create additional damage, and transfer in whole or in part the responsibility for such damage to appellant's shoulders, there being no insult, assault, or excessive force by appellant's agents, but his entire cause of action, as it now stands, whatever it may be, is against the terminal line."

[3] (1) We fail to perceive how the appellant can be relieved from the wrong done the defendant by the interstate commerce act, any of its amendments, or any rules of the Interstate Commerce Commission. A contract of carriage evidenced by a ticket is governed by the law of the state where made. Sawyer v. El Paso & N. E. Ry. Co., 49 Tex. Civ. App. 106, 108 S. W. 719; El Paso & N. E. R. Co. v. Sawyer, 119 S. W. 110; Wharton on Conflict of Laws, § 471b; Robert v. Chicago & A. R. Co., 148 Mo. App. 96, 127 S. W. 925. In this case the appellant made the agent of the terminal line—i. e., the agent of the Alamogordo & Sacramento Mountain Railway, at Cloudcroft—its agent to witness plaintiff's signature, date, stamp, and cancel with punch on back of ticket the date of plaintiff's identification. The agent there did all those things, except stamping the ticket, which he either negligently or willfully failed to do. This omission was the fault of appellant, not of plaintiff, and, as is shown by the authorities of the higher courts of this state, supra, the appellant should bear the consequence of this wrong, and not be allowed to profit by it by exacting from plaintiff fare for being transported over its road, which he had already paid.

[4] (2) No objection was made by any of appellant's train officials to the ticket on account of plaintiff's having stopped over on his return at Alamogordo. Nor do we think that, as between plaintiff and appellant, such stop-over invalidated his ticket, he being within the time limit when he took passage on appellant's train and presented the ticket to its conductor and auditor as evidence of his right to transportation over its line of road. The ticket on its face was not for a continuous trip either in going or returning. It is clear from its face that it was not the entire contract of appellant who furnished it, nor the joint contract of the several roads over which its purchaser was to be transported. Therefore, according to the authorities, the body of the ticket and each coupon constituted a separate and distinct contract between plaintiff and each particular line of road over which its coupon furnished transportation. In other words, under the facts of this particular case, as shown by the record (referring now only as to the return trip), plaintiff had one contract with the Alamogordo & Sacramento Mountain Railway to carry him from Cloudcroft to Alamogordo, a separate contract with the El Paso-Northeastern System to carry him from Alamogordo to El Paso, and another separate contract with the Galveston, Harrisburg

& San Antonio Railway Company to carry him from El Paso to San Antonio. G., C. & S. F. Ry. Co. v. Looney, 85 Tex. 158, 19 S. W. 1039, 16 L. R. A. 471, 34 Am. St. Rep. 787; Harris v. Howe, 74 Tex. 587, 12 S. W. 224, 5 L. R. A. 777, 15 Am. St. Rep. 862; 4 Elliott, Railroads, § 1596; · 2 Hutchinson on Carriers, § 1049; Aurbach v. N. Y. C. & H. R. R. Co., 89 N. Y. 281, 42 Am. Rep. 290; Spencer v. Lovejoy, 96 Ga. 657, 23 S. E. 836, 51 Am. St. Rep. 152; Brian v. Oregon Short Line Ry. Co., 40 Mont. 109, 105 Pac. 489, 25 L. R. A. (N. S.) 459; 6 Cyc. 571. Therefore, as the ticket was not a through contract, and the right of the purchaser and the responsibility of the different companies were the same as though separate tickets had been purchased by plaintiff from each, and each only responsible for injury suffered on its own line, his stopping over in Alamogordo did not invalidate his ticket under the contract.

[5] (3) The third proposition begs the question in assuming that the agent at Cloudcroft was only the agent of the terminal carrier. For the purpose of validating the ticket in the manner prescribed, he was the agent of each road issuing its return coupon, just as appellant was the agent of each in issuing the ticket and preparing it for the going trip. Therefore, when the agent at Cloudcroft neglected to stamp the ticket, such negligence was the negligence of the carrier on whose line of road the plaintiff suffered injury in consequence of such negligence, and, the injury in consequence having been incurred on appellant's line, it must answer for the consequences by making reparation therefor.

[6] (4) In answer to this proposition we need only quote from the opinion of Mr. Justice Eidson in Gulf, C. & S. F. Ry. Co. v. Dyer, 43 Tex. Civ. App. 93, 95 S. W. 14: "We think · the following language used in the opinion in the case of Railway Co. v. Arnold, supra (8 Ind. App. 297, 34 N. E. 744), very pertinent to the subject under consideration: 'We do not concur in the doctrine that it was the duty of the appellee to pay the extra fare demanded of him, and afterward settle the question in dispute with the company; nor do we think that his failure to do so can be considered in mitigation of damages. It is true the amount demanded was trifling, but the principle involved was the same as if the sum demanded had been a large one. However much we may commend the conduct of that person who yields his rights to avoid a difficulty, it is nevertheless the privilege of every person to stand upon his strict legal rights, and the law does not require him to yield them or make concessions in order to avoid trouble. * * * If there was a doubt, it was as much a duty of appellant's agent to forego ejecting ap-

pellee as it was appellee's duty to pay the fare when demanded and continue his journey. Appellant chose to stand upon what it conceived to be its strict legal rights. It cannot now be heard to complain if appellee chose to do the same. It comes with ill grace for the appellant after it has pushed what it believed to be its rights to the last extremity to say that, because it offered to carry appellee if he would pay his fare, the damages ought to be mitigated. * * * The appellee was placed in a very unpleasant position before the passengers on the train. By conduct, if not by words, he stood charged with an attempt to defraud the railroad company, and of endeavoring to ride from Noblesville to Indianapolis without paying the fare therefor. If he had paid the extra fare demanded, a legitimate inference might be drawn that he was guilty of the dishonesty attributed to him. Whether he should pay and stay on the train, or refuse to pay and suffer expulsion, was a matter which the law left to the sole discretion of appellee.' In our opinion the principle of law to be deduced from the authorities referred to is: It is proper to require due care on the part of a person to avoid increasing his own damages; but the reason of the principle ceases when the damage to be avoided is a voluntary injury threatened by the other party who claims the benefit of the doctrine; and, as stated by an eminent authority, for the carrier to say to a passenger, 'You must submit to extortion in order to prevent me from assaulting you, else you will be deemed in law to have your own damage needlessly'—is equivalent to an attempt by the carrier to profit by its own wrongful threats. It amounts to a claim for exemption from liability for an assault, because the wrongdoer first offered his victim a choice between assault and extortion."

4. What we have said in disposing of the three preceding assignments, together with the authorities cited, disposes of the fourth, fifth, sixth, seventh, and eleventh assignments of error as well.

5. Our conclusions of fact dispose of the eighth, ninth, and tenth assignments of error adversely to appellant.

There is no error in the judgment, and it is affirmed.